Putnam *v.* Crombie.

[MONROE GENERAL TERM, September 2, 1861.    *Smith, Knox* and *Johnson,* Justices.]

———————◆———————

## PUTNAM *vs.* CROMBIE.

Upon a trial of issues of fact, there can be no review, on a motion for a new trial, until there has been some determination of such issues, upon which a judgment may be rendered.

While the matter tried is still before the judge, or referee, or jury, undecided, and no judgment can be entered, for that reason, there can be no review, as on a motion for a new trial.

The proofs in an action pending before a county court, being closed, the judge, after hearing counsel, drew up a written statement of certain findings of fact, and conclusions of law, which statement was not signed by him, or filed, or delivered to the party in whose favor it was made, nor was any order entered upon it, as a decision of the matters in issue.    It recited that certain facts deemed important did not appear from the evidence be-

Putnam *v.* Crombie.

fore the court, and ordered that the parties should produce witnesses before the judge, on a day named, touching those matters. An order was thereupon entered, for the production of such witnesses before the court, on a day specified. On that day the defendant appeared and examined a witness, as to the matters mentioned in the order. The case was thereupon submitted to the county judge, who held the matter under advisement, for the purpose of assessing and fixing the amount to be allowed the defendant, when his term of office expired. *Held* that the trial had, in fact and in law, not been finished when the county judge went out of office, there having been no decision by which he was bound or concluded; and that consequently there was nothing to review, upon a motion for a new trial. A trial of the issues, *de novo*, was therefore ordered.

Evidence taken orally, before a former county judge, in an action pending in the county court, cannot be ordered to stand as evidence, upon a new trial of the cause before his successor.

APPEAL from an order of the Monroe county court, granting the plaintiff's application for a new trial. The action was for the foreclosure of a mortgage made by the defendant, John Crombie, to John Fairbanks and the defendant, James Connolly, for the purchase money of the property therein described. The complaint alleged the transfer by John Fairbanks of his interest in the mortgage to James Connolly, and the assignment of the same by James Connolly to the plaintiff, with a guaranty of payment. The defendant Crombie defended, upon the ground that Connolly, acting for himself and in behalf of Fairbanks, made false representations in reference to the adaptability of an article of machinery called the "Ross Mill," to grind powder material; and that Connolly and Fairbanks "well knew the representations to be untrue at the time they were so made as aforesaid." The case states that at the close of the testimony, the court, after hearing the counsel for the respective parties, rendered its decision in the action, as follows:

"This was an action to foreclose a mortgage tried before me as county judge, without a jury; on the trial the execution of the bond and mortgage mentioned in the complaint was admitted, and it appeared that the same had been duly acknowledged and recorded as stated in the complaint; and

the several assignments set forth in the complaint, by which the plaintiff became sole owner of the bond and mortgage, with a guaranty of payment thereof, was also admitted. It also appeared that there was due for principal upon said bond and mortgage the sum of $2000, and for interest due and payable on the —— day of September, 1855, $496.27; that the whole amount due and to become due was $6632.60; that the interest on the $4000 not due at the time of the trial was $134.24. Notice of lis pendens was duly filed April 28, 1855. All the foregoing facts were admitted either by the pleadings or orally by the counsel upon the trial. As to the litigated matters, I find the following facts to be true: That for several years previous to the execution of the bond and mortgage, the mortgagees, John Fairbanks and James Connolly, were partners in business, residing in Rochester, Monroe county, owning in fee the land described in said mortgage, and having thereon the necessary buildings and material for the manufacture of powder; and had been for the several years aforesaid engaged in the manufacturing of powder upon the said lands. That on or about the 14th day of March, 1854, the said Fairbanks & Connolly being then in negotiation with the said John Crombie for the sale to him of the one undivided third part of the said land, the said Connolly, to induce the said Crombie to purchase, stated and represented to him that by means of certain mills, (known as the Ross Mills,) then recently introduced into said powder manufacturing establishment, which he had tried and found to work well, the said establishment could manufacture 150 kegs of powder per day, at a profit of 80 cents per keg; that the powder mills were in good condition, all ready to run; that the buildings were so located that if one should explode, the other would not be injured; that he had tried the Ross Mills and found them to work well. I further find that said Crombie, induced by such representations, purchased one undivided third part of said lands, buildings and machinery, for the manufacture of powder, agreeing to pay

Putnam *v.* Crombie.

therefor the sum of six thousand dollars and interest, as was described in said bond and mortgage; that on the 20th day of April, 1854, the said Fairbanks & Connolly conveyed the undivided third part of said lands, buildings and machinery to the said John Crombie, who to secure the purchase money executed to them the said bond and mortgage. I further find that the said Connolly had not tried the said Ross Mills, and found them to work well; and that the said powder mills, with the said buildings and machinery, could not manufacture powder of an average amount of more than 50 kegs a day. And I further find that the said Connolly knew, at the time he made the representations aforesaid, he had not tried the Ross Mills, so as to be able from such trial to form an opinion that they would work well; but on the contrary, entertained doubts whether they would be sufficient or useful in the manufacture of powder. I further find that the said mills were unsafe and unfit to be used in that business. Now, inasmuch as it does not appear that the powder mills cannot, by an additional expense, be made to manufacture one hundred and fifty kegs of powder per day, and if they can, at what expense this can be done, it is ordered that the parties produce witnesses before this court on the 11th day of October, 1855, at 10 A. M. relative to the following questions: 1st. Can the said manufactory be made to manufacture one hundred and fifty kegs of powder per day? 2d. At what expense can this be done?"

It was conceded by the attorneys for the respective parties that in pursuance of the said decision an order was duly entered in accordance therewith, on the 8th day of October, 1855, directing the parties to produce witnesses before the court on the 11th day of October, 1855, at 10 A. M. relative to the questions specified by the county judge; and "that on or about the 12th day of October, 1855, the defendant in this action, upon due notice to the plaintiff, appeared in the said county court, before the said judge thereof, and took testimony of one witness in regard to the matter so decided

and reserved in and by said decision and order; that the case having thereupon been submitted to the court, the same is still held under advisement, for the purpose of assessing and fixing the amount to be allowed to the defendant, John Crom-, bie, by reason of the several matters set up in his answer, and decided by the said court, as aforesaid; and that no other or further proceedings have been had in the said action." It was further conceded, that Hon. H. Humphrey's term of office as Monroe county judge expired on the 31st day of December, 1855.

Subsequently the plaintiff moved for a new trial, on a case and exceptions, and also on the ground of newly discovered evidence; which motion was, at the October term of the county court, in 1860, granted by Judge Chumasero, the successor of Judge Humphrey. And it having been suggested, on the argument, that certain of the defendant's witnesses were dead, or absent, it was further ordered that the defendant be permitted, at his election, to read the testimony of any of the witnesses given upon the former trial, on the re-trial of the action, with the like effect as though said witnesses were personally present, and then examined anew.

*M. S. Newton,* for the appellant.

*H. C. Ives,* for the respondent.

*By the Court,* JOHNSON, J. I am clearly of the opinion that there must be, in this case, a trial of the issues *de novo,* irrespective, wholly, of any question considered by the county judge, or discussed by counsel in their points upon the argument. The trial had, in fact and in law, never been finished when the county judge, before whom the parties were proceeding, went out of office, and there was, consequently, nothing to review. Upon a trial of issues of fact there can be no review, on a motion for a new trial, until there has been some

Putnam *v.* Crombie.

determination of such issues, upon which a judgment may be rendered.

As long as there has been no determination, by which either party or court is concluded, so long there can be no review, for the simple reason that until the evidence is entirely closed, or while the matter is under advisement upon the evidence, the court, or tribunal before whom the suit is had, may of its own motion open the case for further evidence, and arrive at different conclusions from those which may have been informally announced, or announced in form, without being made matter of record. In short, while the matter tried is still before the judge, or referee, or jury, undecided, and no judgment can be entered for that reason, there can be no review, as on a motion for a new trial.

Here all the issues were on trial before the county judge. The case states that the proofs were closed, and after hearing counsel for the respective parties, the court rendered its decision "as follows." Then follows what is claimed to be a decision, which appears to have been a written statement of the judge, of certain findings of fact, and conclusions of law by him. This statement does not appear to have been signed by him, or filed, or delivered to the party in whose favor it was made, nor was any order entered upon it, as a decision of the matters in issue. It concludes with a statement that certain matters, supposed by the judge to be important, did not appear from the evidence before him, and an order that the parties produce witnesses on a certain day named, before him, touching those matters. Thereupon, as the case states, an order was entered for the production of such witnesses, before the court, by the parties, on the 11th of October, 1855. This is the only order which appears to have been entered after the commencement of the trial. The case then shows that on or about the 12th day of October, 1855, the defendant, upon due notice to the plaintiff, appeared and took the testimony of one witness, in regard to the matters specified in the order, and that the case was thereupon submitted to

the court, and the judge held the matter under advisement, for the purpose of assessing and fixing the amount to be allowed the defendant, when his term of office expired on the 31st of December, 1855.

While the judge had the case thus before him, under advisement, what was there to prevent his ordering further testimony to be produced not only upon the matters specified in the order, but upon any other question of fact in the case, or from coming to a different conclusion, as to the facts established by the evidence ? Nothing whatever. The decision, as it is called, as far as it had been announced, being neither signed by him, nor filed as his decision, was a mere memorandum of his own, which he was at perfect liberty to revise, and change, as his judgment upon further consideration might dictate.

The case, in this situation, before the judge, is quite analogous to that of *Ayrault* v. *Sackett*, (17 *How. Pr. R.* 461,) where the referee had announced his decision verbally, and written an opinion, which he had delivered to the attorney of one of the parties, but had not delivered his report to the successful party, or caused it to be filed. It was there held that the case was still before the referee, and he might at that stage open the cause for further evidence, and if he saw fit make a new or different report. That decision was affirmed at general term.

It is urged by the defendant's counsel that the case may be taken up by the present county judge, on the evidence before his predecessor, and on the footing of what is claimed to have been his decision, and determined, after hearing testimony on the subjects specified in the order. But I do not see how this can be done. I have endeavored to show that here was no decision by which even the predecessor was in any respect bound or concluded, upon any ground, other than mere tenacity of opinion. It rested in opinion merely, and ought not, surely, to be held to conclude any other judge, who may be called upon to decide the case, so that a judg-

ment may be rendered. Another judge, or a jury, might find differently upon the same evidence, in regard to the facts.

Nor do I see how the evidence taken orally before the former judge can be ordered to stand as evidence upon the new trial. Parties may doubtless stipulate that it shall be taken as the evidence, and it would then be regarded as proper evidence in the cause in any future proceeding. But the object of the statute in directing evidence to be taken by the examination of witnesses in open court, was to enable the judge or jury, whose duty it became to determine the facts from the evidence, to judge of the credibility of witnesses, and determine the weight to be given to the testimony of each, in some measure from his appearance and manner upon the stand. If a new trial is to be ordered, as I think it must, I know of no power in the court to make any such order. It would be contrary to all rule and precedent in granting new trials.

For the foregoing reasons, I am of opinion that there must be a trial *de novo* in this case.

[MONROE GENERAL TERM, September 2, 1861. *Smith, Johnson* and *Knox*, Justices.]