STATE EX REL. HARP, ET AL. *v.* VANDERBURGH CIRCUIT COURT ET AL.

[No. 28,530. Filed April 14, 1949.
Rehearing denied June 3, 1949.]

354

356

Young, J., dissents with opinion.

Starr, C. J., concurs in dissent.

*Wilbur F. Dassel,* of Evansville, for relators.

*Benjamin E. Buente,* of Evansville, for respondents.

EMMERT, J.—The controversy involved in this original action for a writ of prohibition grows out of the jurisdiction of a succeeding presiding judge of the Vanderburgh Circuit Court in a cause tried by the preceding judge, and the proper construction of Rule 1-9 of our court.[1]

During the term of office of Judge Nat H. Youngblood, who was the regular presiding judge of the Vanderburgh Circuit Court until January 1, 1949, there was pending Cause No. 1364 entitled *William E. Harp* v. *August J. Greubel et al.,* for a declaratory judgment, and Cause No. 2850 entitled *August J. Greubel et al.* v. *William E. Harp et al.,* for an injunction and damages, which causes were consolidated for trial before the court without a jury, and tried before the then regular presiding judge on March 31, and April 1, 1948, upon the conclusion of which they were then taken under advisement.

---

[1] Rule 1-9. Authority of Judges. "The judge who presides at the trial of a cause shall, if available, rule on the motion for a new trial, if one is filed, and shall sign all bills of exceptions, if such are requested. The unavailability of any such trial judge shall be determined and shown by a court order made by the judge then presiding in such court."

The petition for the writ alleges that on the 29th day of December, 1948, in open court Judge Youngblood announced his findings in Cause No. 1364 and Cause No. 2850 for the relators in this original action, and directed their counsel to prepare written entries. There was no minute made in the court's bench docket at the time the findings were announced.

The respondents contend that no notice of the announcement was given to counsel for the adversary parties in either cause, and that the entries containing the findings and judgments signed by the then regular judge on December 31, 1948, were invalid because at the time there was a judge *pro tempore* presiding in the Vanderburgh Circuit Court, and the entry was signed in the judge's office in the court house; therefore, the succeeding regular presiding judge of such court, Judge Ollie C. Reeves, had jurisdiction to entertain and act upon petitions by the Greubels in causes No. 1364 and No. 2850 to vacate and annul the findings and judgments signed December 31st and ordered entered as of December 29th, the day the findings were announced.

Section 4-316, Burns' 1946 Replacement (Acts of 1855, ch. 19, § 4, p. 61) makes provision for the appointment of a judge *pro tempore* for a circuit court. In part, it provides for such appointment to be in writing, and that "Such written appointment shall be entered on the order-book of such court, and such appointee shall, after being sworn, if he be not a judge of a court of record, conduct the business of such court, subject to the same rules and regulations that govern circuit courts in other cases, and shall have the same authority, during the continuance of his appointment, as the judge elect, or making such appointment."

We take judicial notice of who the regular judges of the several judicial circuits are, and of the beginning of

terms of court. *Heacock* v. *Arnold* (1929), 90 Ind. App. 476, 169 N. E. 89. The December term of the Vanderburgh Circuit Court began the first Monday in December, and unless duly adjourned, continued until the first Monday in March, 1949. Section 4-332, Burns' 1946 Replacement. From the certified copies of the various exhibits it appears the petitions to vacate and annul the findings and judgments were filed within the December term.

However, we do not take judicial notice of the appointment and term of any judge *pro tempore*. That is a matter of court record, which under § 4-316, Burns' 1946 Replacement, must appear on the official records of that court. There is nothing in the petition and return in this action which states that any judge *pro tempore* was appointed in writing, or that any oath of office was ever executed or that such appointment and oath were duly entered in the order book. The practice in this court in original actions is to consider the verified petition and return as the evidence upon which relief is granted or denied. If there was a *de jure* judge *pro tempore* presiding in the Vanderburgh Circuit Court on December 31st, that was a matter of defense which the verified return should have alleged, and in conformity with the practice in such cases, certified copies of the orders and entries pertaining thereto should have been set out or made exhibits to the return. In the absence of such evidence showing of record a duly appointed, qualified and acting judge *pro tempore,* this court must presume that the regular judge presided on December 31st. *State ex rel. Eggers* v. *Branaman* (1932), 204 Ind. 238, 183 N. E. 653, and cases therein cited. Therefore, in this original action we are only concerned with the jurisdiction of the two regular

presiding judges, unaffected by a question of the jurisdiction of an intervening judge *pro tempore.*

It is not contradicted that the trial judge orally in open court announced his findings in each of the two cases on December 29th. This was a judicial act which then cut off any right of dismissal. Section 2-901, Burns' 1946 Replacement. A finding may be orally announced in open court. *Sauer, Admx.* v. *Sauer* (1921), 77 Ind. App. 22, 133 N. E. 169; *Cohn* v. *Rumely* (1881), 74 Ind. 120. It would have been better practice to have made minutes of the findings in the court's bench docket minute book, which in case of any controversy after the term would have been written evidence sufficient for a *nunc pro tunc* entry. *Cook* v. *State* (1941), 219 Ind. 234, 37 N. E. 2d 63; *In re Saric* (1925), 197 Ind. 1, 149 N. E. 434. The announcement of a finding is analogous to the rendition of a judgment. "Generally, however, the courts pronouncement may be oral as well as written, as where it is announced from the bench." 1 Freeman *Judgments* 80, § 48 (5th ed.). The signing of the findings on December 31st were mere ministerial acts of the judge which made a record of what he had previously judicially announced in open court. See *Bailer* v. *Dowd* (1942), 219 Ind. 624, 40 N. E. 2d 325. The fact that opposing counsel was not present in court when the findings were announced did not prejudice the rights of his clients, for his affidavit shows he learned of the matter the evening of December 31st, and on the 3rd day of January, in both causes, he, as counsel for the Greubels, made oral motions to withhold the entry of the records of the finding and judgment in each case, which were later followed on January 25th, by motions to vacate the actions of the trial judge in each case. Two days later motions for new trial were filed in each cause.

"A court is defined to consist of persons officially assembled at a time and place appointed by law for the administration of Justice. *In re Allison,* 16 Am. St. Rep. 224, 13 Colo. 525; *Dunn* v. *State,* 35 Am. Dec. 54, 2 Ark. 229; *Levey* v. *Bigelow,* 6 Ind. App. 677, 34 N. E. 128.

". . . the proper persons, namely, the clerk, sheriff and judge of the White Circuit Court had assembled at the time appointed by law for holding said court." So reasoned this court in *Board of Commissioners of White County* v. *Gwin, Sheriff* (1894), 136 Ind. 562, 569, 570, 36 N. E. 237, in holding that a duly constituted circuit court was in existence. The court could not exist without a judge, but the judge is not the court. "Judge Elliott said in *Shoultz* v. *McPheeters* (1881), 79 Ind. 373, 376, 'Throughout all the constitutional provisions runs the controlling idea that a court cannot exist without a judge.' But a judge is not the court, although frequently the words are used interchangeably." *State ex rel. Kiser, Cohn & Shumaker, Inc.* v. *Sammons* (1944), 223 Ind. 27, 34, 57 N. E. 2d 587. "The judge of a court, while presiding over the court, is, by common courtesy, called 'the court,' and the words 'the court,' and 'the judge,' or 'judges,' are frequently used in our statutes as synonymous. *Michigan Cent. R. R. Co.* v. *Northern Ind. R. R. Co.,* 3 Ind. 239 (245)." *Levey* v. *Bigelow* (1893), 6 Ind. App. 677, 682, 34 N. E. 128. It follows from these well recognized principles that the regular presiding judge of a circuit court is not the circuit court, and that his acts to become that of the court must have been done within his jurisdiction. When a special judge assumes jurisdiction in a particular cause, his acts within his jurisdiction become those of the court, and the presiding judge has no jurisdiction to interfere with his juris-

diction. Each could perform valid judicial acts on the same day at the same time and they would then be the acts of the same circuit court, but that does not mean that the regular judge could interfere with the records under the control of the special judge any more than the special judge could interfere with the records properly made and under the control of the regular judge. The rule that the court has jurisdiction to vacate, amend and modify its records during the term when made does not mean that in all cases the regular judge possesses this jurisdiction, for he is not the court, and his jurisdiction depends upon his jurisdiction to act in the particular case.

In *State ex rel. Hodshire* v. *Bingham, Judge* (May 5, 1941), 218 Ind. 490, 33 N. E. 2d 771, 134 A. L. R. 1126, this court noted that it had on the day of filing of the opinion, adopted Rule 1-9 effective as of September 1, 1941. That case also held that a judge *pro tempore* whose authority to act generally had expired when the regular judge resumed the bench, was the judge to rule on a motion for new trial thereafter filed, and that the action of the regular judge in striking out and expunging the record made by the judge *pro tempore* was void. The court therein approved the reasoning of this court in *Staser* v. *Hogan* (1889), 120 Ind. 207, 223, 21 N. E. 911, 916, 22 N. E. 990, which held that a judge *pro tempore* after the term of trial was the proper judge to rule on the motion for a new trial and enter judgment on the verdict. Since under § 4-316, Burns' 1946 Replacement, the judge *pro tempore* is to "conduct the business of such court, subject to the same rules and regulations that govern circuit courts in other cases, and shall have the same authority during the continuance of his appointment, as the judge elect, or making such appointment," the irresistible con-

clusion from these cases is that the trial judge was the proper judge to rule on the motion for new trial, enter judgment on the verdict, and that the acts of a succeeding regular judge in interfering with the record were void.

"A party to an action is entitled to a determination of the issues by the jury or judge that heard the evidence, and where a case is tried by the judge, and ▉▉▉▉▉ the issues remain undetermined at the death resignation or expiration of the term of such judge, his successor cannot decide, nor make findings in, the case, without a trial *de novo*. *Bahnsen* v. *Gilbert* (1893), 55 Minn. 334, 56 N. W. 1117; *Clanton* v. *Ryan* (1890), 14 Colo. 419, 24 Pac. 258; *In re Sullivan* (1904), 143 Cal. 462, 77 Pac. 153; *Conolly* v. *Ashworth* (1893), 98 Cal. 205, 33 Pac. 60; *Mace* v. *O'Reilly* (1886), 70 Cal. 231, 11 Pac. 721; *Norvell* v. *Deval* (1872), 50 Mo. 272, 11 Am. Rep. 413; *Weyman* v. *National Broadway Bank* (1880), 59 How. Prac. 331; *Putnam* v. *Crombie* (1861), 34 Barb. 232; *Cain* v. *Libby* (1884), 32 Minn. 491, 21 N. W. 739; *Ells* v. *Rector* (1875), 32 Mich. 379, 23 Cyc. 565." *Wainwright* v. *P. H. & F. M. Roots Co.* (1912), 176 Ind. 682, 698, 699, 97 N. E. 8. To permit a succeeding judge to vacate and annul a finding made by the trial judge would be a judicial act not contemplated either by the authorities of this state or by Rule 1-9, for it would permit him, in effect, to grant a new trial. It is not to be presumed that this court promulgated a rule which is futile, and by implication, acts which would make the rule meaningless are prohibited. To permit a succeeding regular judge to prevent the making of a record of a finding previously announced, or to vacate such a record after it is made, would abolish the jurisdiction of the trial judge to rule on the motion for a new trial and enter judgment either on a finding

or a verdict. See *Staser* v. *Hogan, supra.* The rule was not intended to establish any such chaotic jurisdictional situations.

This construction is supported by Rule 1-8. This case was tried without a jury. Rule 1-8 provides that "On a motion for a new trial in an action tried without a jury, the court may open the judgment, if one has been entered, take additional testimony, amend findings of fact and conclusions of law, or make new findings and conclusions, and direct the entry of a new judgment." When Rule 1-9 is construed with this rule, it is apparent that the trial judge was to control the record in the case he had tried just the same as if he had been appointed special judge, and that his jurisdiction should be the same as any duly appointed and acting special judge who tried the case. It was unnecessary in the cases below for the trial judge to be appointed a special judge, but his jurisdiction to act continued under the rule, nor would any attempted limitation of jurisdiction by the appointment for less than the rule provides be valid.

As long as the trial judge was the regular presiding judge of the Vanderburgh Circuit Court, it was the duty of the Clerk of such court to make the court's records as that judge directed. The trial judge did officially sign entries which contained a finding and judgment in each cause. It was not the fault of the trial judge that the clerk was behind in making up the order book, nor should that fact deprive the trial judge of his jurisdiction to control the records in the cases he had tried, announced his findings and signed an entry for judgments. Section 1 of Chapter 100 of the 1933 Acts amended the previous law directing that the order book be read and signed in open court (Acts

1885 [Spec. Sess.], ch. 32, § 1, p. 124), by providing that:

"It shall be the duty of the clerk of the circuit court to draw up each day's proceedings at full length in the proper order-book of said court, and the judge of said court shall thereupon sign the same, and no process shall issue upon any judgment or decree of court until it shall have been so signed by the judge." Section 4-324, Burns' 1946 Replacement.

The general rule is that courts speak by their order books. *Cook* v. *State* (1941), 219 Ind. 234, 37 N. E. 2d 63; *O'Malia* v. *State* (1934), 207 Ind. 308, 192 N. E. 435. The signing of the entries containing the judgments on the findings previously announced December 29th, constituted written orders to the clerk to make up the order book entries in conformity with such judgments. These were official entries the same as if the same writing had been placed on the bench docket minute book. When the judgments appear on the order book, they become notice of their contents.

The signing of the entries was done in a dual capacity. The signing as to that part of each entry containing the finding was ministerial, since it merely made a record of what the judge had previously announced in open court. But the same act of signing as to that part of each entry containing the judgment was judicial, since this was the first pronouncement of each judgment, but it was not such a judicial act as could only be done in open court. The judgments of necessity must follow and conform with the findings, and § 4-324, Burns' 1946 Replacement, does not now require the order book to be read and signed in open court. The judgments were valid from the time the trial judge signed the entries in chambers. The order book entries could even be signed at a subsequent term.

*Kent* v. *Fullenlove* (1872), 38 Ind. 522; *Beitman* v. *Hopkins* (1887), 109 Ind. 177, 9 N. E. 720.

The findings should have been entered on the order book as of December 29, 1948, but the judgments should have been entered on the order book as of December 31, 1948, and upon proper motion by the respondents, the record should be made up accordingly. *Livingston* v. *Livingston* (1921), 190 Ind. 223, 130 N. E. 122.

The temporary writ is made permanent.

Starr, C. J. and Young, J. dissent.

NOTE.—Reported in 85 N. E. 2d 254.

## DISSENTING OPINION

YOUNG, J.—The author of the prevailing opinion has been unable to convince me, and I have been unable to convince myself, that the duly elected judge of the Vanderburgh Circuit Court should be prohibited from exercising jurisdiction in connection with action taken by his court during term. The power of a court over its judgments during the entire term at which they are rendered, is unlimited. 1 Freeman, *Judgments,* §§ 140, 194 (5th ed.). This rule has been consistently followed by the decisions of this court. *State ex rel. Lawson* v. *Stodola* (1948), 226 Ind. 631, 82 N. E. 2d 896; *Livingston* v. *Livingston* (1921), 190 Ind. 223, 229, 130 N. E. 122; *Wabash R. Co.* v. *City of Gary* (1921), 191 Ind. 394, 397, 132 N. E. 737; *Vesey* v. *Day* (1910), 175 Ind. 406, 411, 94 N. E. 481.

In *Livingston* v. *Livingston, supra,* this court used the following language which, it seems to me, is very significant in the case before us:

"The power to vacate judgments was conceded by the common law to all its courts. This power was

exercised in a great variety of circumstances, and subject to various restraints. The practice in the different states is, in many respects, so conflicting that few rules can be laid down as universally applicable. One rule is, however, undoubted. It is that the power of a court over its judgments, during the entire term at which they are rendered, is unlimited. 1 Freeman, *Judgments,* § 90 (4th ed.).

"The proceedings in a cause remain *in fieri* until the end of the term at which the motion for a new trial, though filed after judgment, is ruled upon, and in the meantime the court may alter, amend, or set aside its former ruling, orders and judgment, without notice to the parties. (Citing cases.)"

Consent judgments and criminal judgments which have been executed are sometimes recognized as exceptions to the general rule, 1 Freeman, *Judgments,* § 140 (5th ed.), but these exceptions are not material in the case before us.

This rule is not altered by the fact that a new judge has taken office. Control of records reposes in the court and the court acts by its judge, and the fact that on one day there is one judge and on the next day, during the same term, there is another judge, does not divest the court, speaking by the second judge who is then in office, of the right to control the record made during the same term by the court speaking by the earlier judge. 48 C. J. S., Judges, § 41, p. 1006; *Hedrick* v. *Hedrick* (1867), 28 Ind. 291, 293; *Logan* v. *Columbia Canning Co.* (1905), 2 Alaska 557; *State ex rel. Rucker* v. *Superior Court* (1897), 18 Wash. 227, 51 Pac. 365; *Department of Public Works and Buildings* v. *Legg et al.* (1940), 374 Ill. 306, 29 N. E. 2d 515.

In 48 C. J. S., at p. 1006, the following language is used:

"Although judges are not courts, in a strict sense it may be said that judges exercise the power vested

in courts as such, and not in them as officers qua officers, that is to say, the jurisdiction is vested in the court, not in the judge, however composed, whether of one judge or several. The authority and powers of a judge are incident to, and grow out of, the jurisdiction of the court itself. . . . The court continues, although the term of the judge is terminated, and, where the judge is succeeded by another, the court retains its identity. It is the same court. . . ."

In *Hedrick* v. *Hedrick, supra,* one judge succeeded another and the jurisdiction of the second judge was involved. This court said: "The change of judges would not change the court; for all judicial purposes they remained identical."

In *State ex rel. Rucker* v. *Superior Court, supra,* the Supreme Court of Washington used the following language:

"The judge of the Superior Court who directed the judgment of dismissal on the 29th day of December, 1896, retired from office, and his successor occupied the office at the time the motion to vacate the judgment was made. The action of the Superior Court is that of the judge of the court, and a change in the persons who occupied the position does not affect the consideration of the vacation of the judgment. . . ."

In *Logan* v. *Columbia Canning Co., supra,* it was held specifically that a successor judge may vacate a judgment order entered by his predecessor during the same term of court.

In the case before us a judgment was entered at the December term of the Vanderburgh Circuit Court on the last day of the term of office of the regular judge of said court. On the following day and during the same term of court, a new judge, who had been elected to succeed the judge who had made the record, took

office. He was asked to vacate the judgment entered by his predecessor and in this original action we are asked to prohibit him from entertaining such motion or taking any action in connection with the case involved. As I view the situation, the Vanderburgh Circuit Court had unlimited jurisdiction during the term of court at which the judgment in question was entered to change or vacate that judgment and could speak only by its regularly elected judge. Relators claim that when a motion for new trial was filed then under Rule 1-9 of this court the retiring judge in effect became special judge in the case involved. That is true, but only for the limited purposes stated in the rule. Rule 1-9 simply provides that the judge who presides at the trial of a cause shall, if available, rule on the motion for a new trial, if one is filed, and shall sign all bills of exceptions, if such are requested. The writ of mandate, which is before us, shows that after the petition had been filed with the new regular judge to have the judgment vacated, a motion for a new trial was filed with the Honorable Nat H. Youngblood, who was the judge of the Vanderburgh Circuit Court at the time the judgment in question was rendered. In the motion itself and in the order and entry showing the filing of the motion for a new trial it is specifically stated that the motion for a new trial is filed by the defendants without waiving any of the qustions presented in the affidavit and motion theretofore filed with the new judge of the court in which he was asked to hold the judgment a nullity and void, and in this order it was also stated that the Honorable Nat H. Youngblood, having tried the case which resulted in the judgment here involved, was appointed pursuant to Rule 1-9 of the Supreme Court in the capacity of special judge *for the purpose of passing upon said motion for a new trial.*

Rule 1-9 was construed in 1943 by a learned former attorney general as making the retiring judge of the court a special judge only for the purposes specified in the rule. See Opinions of Attorney General of Indiana, 1943, p. 152. In *Ploughe* v. *Indianapolis Railways, Inc.* (1943), 222 Ind. 125, 128, 51 N. E. 2d 626, this court held that the rule in nowise had the effect of extending the official term of the retiring judge, but that its effect was that, were he called upon to approve a bill of exceptions or, by the same token, to rule upon a motion for a new trial he would be "acting merely in the capacity of a special judge," and the opinion of the attorney general just referred to, holding that he acted in the capacity of special judge *only for the purposes specified in the rule*, was definitely adopted and approved.

We have therefore, it seems to me, a situation where a newly elected judge took office during the term at which a questionable judgment had been entered. A petition to have it vacated and annulled was filed with the newly elected judge before a motion for a new trial had been filed. At that time, therefore, under the law to which we have referred, the new judge, respondent herein, had power and jurisdiction to alter or vacate the judgment in question either upon his own motion or upon petition. The old regular judge, who had tried the case would, under Rule 1-9, acting in the capacity of special judge, have the power and authority to entertain a motion for a new trial and to pass upon bills of exceptions. He had no power or jurisdiction beyond that. All other power and jurisdiction over the judgment involved reposed in the regular judge of the court, and included in that power of the newly elected judge was the power and authority to alter or vacate, if he saw fit, the judgment involved during the term at which it was entered, and this would be particularly true

where, as here, the power to vacate had been invoked before a motion for a new trial had been filed and the old judge appeared in the capacity of special judge.

The petition filed with the newly elected regular judge of the Vanderburgh Circuit Court, asking him to vacate and nullify the judgment here involved, was based upon a claim by the defendants in the case that on December 31, when the judgment here involved was rendered by the then regular judge of the Vanderburgh Circuit Court, there was acting a judge *pro tempore* and that during the period for which such judge *pro tempore* was appointed all the power of the court reposed in the judge *pro tempore* and the regular judge was without power to render the judgment here involved. This theory is supported by authority. When a judge *pro tempore* is appointed there is vested in him the functions and power of the regular judge during the entire judicial day for which the appointment of the judge *pro tempore* was made. *State ex rel. Hodshire* v. *Bingham, Judge* (1941), 218 Ind. 490, 491, 33 N. E. 2d 771; *State ex rel. Freeman* v. *Sup. Ct. Marion County* (1940), 216 Ind. 372, 377, 24 N. E. 2d 928.

In the prevailing opinion the position is taken that the respondent should have shown by verified copies of the record, as a matter of defense, that a judge *pro tempore* was appointed and had qualified and was acting when the judgment was rendered on December 31 by the then regular judge of the court.. With that position, I disagree, but will not elaborate my thought on the matter because I cannot see that the question of whether or not there was a judge *pro tempore* appointed and acting on the day the judgment here involved was rendered is controlling in the matter before us. If there had been a judge *pro tempore* duly appointed, qualified and acting at the time the regular judge entered the

judgment involved herein the judgment would of course be void. But even if there had been no judge *pro tempore* and the judgment involved was valid, the newly elected regular judge of the court had power and jurisdiction to vacate such judgment during the term at which it was rendered, and, having such power and jurisdiction, we should not prohibit him from exercising same simply because he was asked to exercise his power upon a mistaken theory of fact.

In *State ex rel. Lawson* v. *Stodola, supra,* a motion for a new trial was filed in a case where a default had been taken and a new trial was granted. It was contended that in a default case a motion for a new trial was not proper, and this court was asked in an original action to prohibit the trial court from proceeding with a new trial. This court agreed that a motion for a new trial in a default case was improper, but denied a writ of prohibition and used the following language:

> "It must be remembered, however, that this order was made at the same term at which the default judgment was rendered. Due to this fact the respondent had the right and power to vacate this judgment on his own motion. The power of the court over its own civil judgments during the entire term at which they are rendered, is unlimited. *Livingston* v. *Livingston* (1920), 190 Ind. 223, 130 N. E. 122; *Wabash R. Co.* v. *City of Gary* (1921), 191 Ind. 394, 132 N. E. 737. It follows, therefore, notwithstanding the motion for a new trial was of no effect, what the court did it had jurisdiction to do and cannot be disturbed by this court."

As in the Stodola case the court, regardless of the fact that the only matter before it was a motion for a new trial, which was improper, had a right to vacate the judgment involved, so in this case, even though the petition asking the newly elected regular judge of the

Vanderburgh Circuit Court to nullify the judgment was based upon a mistaken allegation that there was a judge *pro tempore* acting at the time the judgment was rendered, we should not prohibit the Vanderburgh Circuit Court from taking any steps it thinks proper in the exercise of its general unlimited power over its judgments during the term at which they are rendered. The special power of the retiring judge in connection with a motion for a new trial should not and does not, in my opinion, nullify the general power of the court, acting through its regular judge, to control its orders and judgments entered during the term at which such control is exercised.

I think the temporary writ should be vacated and a permanent writ should be denied.

Starr, C. J., concurs in this opinion.

NOTE.—Reported in 85 N. E. 2d 254.