420 P.2d 945

**The STATE of Arizona and Pima County, State of Arizona, Petitioners,**

**v.**

**The SUPERIOR COURT IN AND FOR the COUNTY OF PIMA, State of Arizona, and the Honorable John P. Collins, Judge of the Superior Court, Division One, In and For the County of Pima, Respondents.**

**2 CA–CIV 325, 344.**

Court of Appeals of Arizona.

Dec. 5, 1966.

Rehearing Denied Jan. 16, 1967.

See 4 Ariz.App. 562, 422 P.2d 393.

---

Darrell F. Smith, Atty. Gen., William J. Schafer, III, County Atty. of Pima County, Edward W. Scruggs, Sp. Asst. Atty. Gen., Tucson, for petitioners.

Johnson, Darrow, D'Antonio, Hayes & Morales, by Lawrence P. D'Antonio, Tucson, for respondents.

MOLLOY, Judge.

This court has issued a writ of certiorari to review an order of the respondent-judge entered on October 11, 1966, requiring that a grand jury be called to immediate session and be discharged forthwith. The grand jury so affected was impaneled on December 7, 1965, by an order of the superior court, the Honorable Lee Garrett sitting as judge thereof.

The order of the respondent-judge was made in a criminal action entitled "State of Arizona, plaintiff, v. Sol Ahee, defendant, No. A–15496," pending in the superior court of Pima county. There had been filed in said action a motion to quash the indictment returned by the subject grand jury, charging the defendant with one count of bribery and five counts of perjury before the grand jury.

In a memorandum opinion and order, the respondent-judge granted the motion to quash the indictment in question, as to all counts thereof, and in addition made the order which is the subject of this appellate review, predicating this last portion of his order on both Rules 88 and 97, Rules of Criminal Procedure, 17 A.R.S. Rule 88

reads as follows: "If a challenge to the panel is sustained, the grand jury shall be discharged." Rule 97, insofar as pertinent, will be quoted hereafter in this opinion.

In the motion to quash the indictment, multifarious attacks were made questioning the propriety of the indictment. Several of these pertained to the manner of the impaneling of the grand jury, the method and purpose of its inquiries and the alleged disqualification of one grand juror, by reason of his being an internal revenue agent of the United States Government.

In directing a discharge of the grand jury, the respondent-judge indicated that under applicable rules of criminal procedure, the sustaining of a challenge to an individual grand juror would not justify the discharge of the entire panel. With this, we agree. Rule 84, Rules of Criminal Procedure, provides as follows:

"A challenge to the panel may be made only on the ground that the grand jurors were not selected or drawn according to law."

Rule 89, Rules of Criminal Procedure, deals with a situation when a challenge to an individual grand juror is sustained, and this rule provides that the individual juror shall be discharged.

As cause for discharging the grand jury itself, the respondent-judge gave two basic reasons:

(1) that when the jurors summoned for grand jury duty appeared, the court and the county attorney did not examine them "* * * touching their qualifications as such jurors," and

(2) that the purposes for which this grand jury was impaneled on December 7, 1965, had been served on February 7, 1966, and that not later than April 7, 1966, it should have been discharged.

Rule 82, Rules of Criminal Procedure, pertains to the examination of jurors called for grand jury service and reads:

"When a grand jury is drawn and appears, the court and the county attorney or other prosecuting officer *shall*

examine the jurors touching their qualifications as such jurors." (Emphasis added)

It is the respondents' contention that this rule is mandatory and that a failure to examine the jurors summoned as to their statutory qualifications renders the impanelment proceeding void. There was no showing made in the lower court, nor is any attempt made here, to show that any one or more of the members of the grand jury in question do not have the qualifications specified by law.

The transcript of the impanelment of the subject grand jury before the Honorable Lee Garrett indicates that jurors were not questioned as to their statutory qualifications [1] but only as to matters entitling one to be excused from jury duty, and as to matters going to disqualification because of bias.

■ The petitioner herein has asked this court to supplement the record with written statements purportedly taken from each prospective juror at the time of the impanelment, and certified copies of the affidavits of registration as electors as to each of the grand jurors, which purportedly are on file in the office of the county recorder of Pima county, which two documents together would indicate substantial compliance with all of the statutory requirements as to qualifications of jurors. We have refused to grant such a motion because in our opinion it exceeds the limits of what this court may take judicial notice in an appellate proceeding. Bade v. Drachman (Supplemental Opinion on Motion for Rehearing), 4 Ariz.App. 55, 417 P.2d 689, 702 (1966).

■ We proceed to determine whether the failure to comply with Rule 82 constituted such a defect as to render the

impanelment void and to require a discharge of the grand jury. We believe Rule 84, Rules of Criminal Procedure, to be controlling:

"A challenge to the panel may be made only on the ground that the grand jurors were not selected or drawn according to law."

We are led to this rule by Rule 169(A) (2) (a), Rules of Criminal Procedure, which provides that an indictment may be quashed upon the ground:

"That there was ground for a challenge to the panel or to an individual grand juror."

As we subsequently point out, it was only in pursuance of this latter rule that the matter of the impanelment of the grand jury was before the respondent-judge.

■ It is the state's contention herein that the words " * * * not selected or drawn according to law" have a circumscribed meaning which does not include the examination of the jurors " * * * touching their qualifications * * * " in pursuance of Rule 82. The historical background of the subject rule and comparable provisions of our Rules of Criminal Procedure pertaining to petit juries convinces us that this contention is correct.

The institution of the grand jury is of ancient origin, going back in the history of England many centuries. 24 Am.Jur. Grand Jury § 3, p. 833; 38 C.J.S. Grand Juries § 1, p. 980. During most of its history there has been a selection process by which some person or persons in authority have selected out of the citizenry certain persons deemed to be of such character as to be suitable for grand jury service. At common law, the grand jurors were usually selected by the sheriff. 38 C.J.S. Grand Juries § 9, p. 995. In modern times, the

---

1. A.R.S. § 21–201 states the qualifications of grand and petit jurors to be:
   "Every juror, grand and petit, shall be a citizen of the United States, a resident of the county for at least six months next prior to being summoned as a juror, sober and intelligent, of sound mind and good moral character, over twenty-one years of age, able to understand the English language, and shall not have been convicted of a felony or be under indictment or other legal accusation of any felony."

concept that the constituency of the grand jury should not be left to the arbitrary selection of one or more officials has injected into the selection process a drawing, usually conducted in public according to statutory requirements. 38 C.J.S. Grand Juries § 9, pp. 995–996; 24 Am.Jur. Grand Jury § 18, p. 844.[2]

The Howell Code showed evidence of this evolution in the selection of grand jurors:

"The judge of the district court, the probate judge and sheriff of the proper county, or any two of them, shall meet at the office of the clerk of the district court on the first Tuesday of March in each year, and at such other times as they may deem it necessary, and there proceed *to select* from the electors of such county, qualified to serve as jurors, not less than thirty-six nor more than fifty for grand jurors, and not less than forty nor more than sixty for trial jurors; and the persons so selected shall be subject *to be drawn* and summoned as such jurors for the year next ensuing, unless additions to such list are made, subject to the provisions of this chapter." (Emphasis added)

The Howell Code, ch. XLVII, section 2, p. 293.

This concept of "selecting" a grand jury list out of which a particular grand jury might be "drawn" substantially persisted in our statutory law until the Revised Code of 1928. A major variation from this procedure appeared in the Compiled Laws of

1871, under which code the prerogative of selecting a grand jury was delegated to the sheriff, with few limitations upon his discretion. Compiled Laws of 1871, ch. XLVII, section 8, p. 383. However up to the 1928 Code, in each compilation or revision of our laws subsequent to that of 1871,[3] the "selection" and "drawing" system prevailed. In each of these compilations and codifications there was provision that a challenge to the grand jury panel could be interposed for only certain limited reasons, which had to do with the manner of this selecting and drawing process.[4] The Revised Code of 1928 retained the substance of this history in these words:

"A challenge to the panel of a grand jury may be interposed only on the grounds that the requisite number of ballots was not drawn from the jury box, or that the drawing was not had in the presence of officers designated by law."

Revised Code of 1928, section 4960.

Existing contemporaneously with this law strictly limiting the grounds of a challenge to a grand jury panel has been the requirement that grand jurors be examined " * * touching their qualifications * * *."[5]

The 1928 Code, apparently without benefit of special statutory enactment, made a substantial change in the law pertaining to grand juries in that it eliminated the discretionary "selecting" process, and provided that grand juries should be drawn from the jury list prepared by the board of supervisors. Revised Code of 1928, section 1913.

---

2. It is interesting to note that both sections in these two well recognized legal encyclopedias are entitled "Selection and Drawing," and that both sections are concerned with matters occurring before the summoning and impaneling of the jury, which subjects are treated in subsequent sections.

3. See Compiled Laws of 1877, ch. XLVII, sections 13–14, p. 405 and sections 17–18, p. 406; Revised Statutes of Arizona, 1887, sections 2179–2181; Revised Statutes of 1901, title 38, ch. 3, sections 2791–2800; and Revised Statutes of Arizona, 1913, title 26, ch. 3, sections 3525–3535.

4. See Howell Code, ch. XI, section 161, p. 90; Compiled Laws of 1871, ch. 11, section 161, p. 118; Compiled Laws of 1877, ch. 11, section 161, p. 119; Revised Statutes of Arizona, 1901, Penal Code, title VI, ch. II, section 791, p. 1321; Revised Statutes of Arizona, 1913, Penal Code, title 6, ch. II, section 903, p. 177.

5. Revised Statutes of Arizona, 1887, Penal Code, title VI, ch. II, section 1384, p. 774; Revised Statutes of Arizona, 1901, Penal Code, title VI, ch. II, section 789, p. 1321; Revised Statutes of Arizona, 1913, Penal Code, section 901, p. 177; Revised Code of 1928, section 4960; A.C.A.1939, section 44–601.

This procedure, inaugurated by the 1928 Code, is substantially the same as that prescribed by present statutory law. A.R.S. sections 21–301, 21–313, and 21–314. But the legislative history remains to clarify the meaning of the words " * * * selected and drawn according to law."

These particular words limiting a challenge to the grand jury panel first appeared in the Rules of Criminal Procedure, Rule 117, section 44–603 of the 1939 Code. They existed side by side with the old verbiage, quoted above from the 1928 Code, which was section 44–601 of the 1939 compilation. We believe there is no basic conflict between the two wordings. If our Supreme Court had intended to enlarge the grounds for a challenge to the grand jury panel, we believe it would have selected language other than "selected and drawn according to law," words which have special significance in the light of the historical development of the selection of grand jurors, both in the English common law and in this state.

Since the inception of the Territory of Arizona, to the present time, there has been the statutory requirement that the board of supervisors prepare a list of all persons "qualified" to serve as jurors.[6] It was out of such a list that the subject grand jury was drawn. A.R.S. section 21–314. A failure, then, by the court to comply with the requirement of examining jurors " * * * touching their qualifications * * *" should not ordinarily result in the inclusion of unqualified persons. A trial before the court as to challenges to either the panel or individual jurors is available to establish disqualification, Rule 87, Rules of Criminal Procedure, a process not followed here.

■ Further indication that it is the intent of Rule 84 to exclude a challenge going to the manner of the examination of the jury at the time of its impanelment is to be found in the comparable rule of criminal procedure pertaining to petit juries. It is a general rule of construction that if the very same language is used in different portions of the same statutory enactment, it is presumed that such identical language is intended to have similar meaning. 50 Am. Jur. Statutes § 271, p. 259; 82 C.J.S. Statutes § 366a, p. 812.

The comparable rule pertaining to petit juries is Rule 213, Rules of Criminal Procedure, reading in part as follows:

"Rule 213. Challenges to panel; procedure

"A. The panel is a list of jurors returned by the sheriff to serve at a particular court or for the trial of a particular action. A challenge to a panel is an objection made to all the jurors.

"B. A challenge to the panel may be made only on the ground that the jurors were *not selected or drawn according to law.*

"C. *Challenges to the panel shall be made and decided before any individual juror is examined.*" (Emphasis added)

We note that the identical words "not selected or drawn" appear in this rule, as they do in Rule 84, now under discussion. It seems to be crystal-clear in this rule that the examination of individual jurors is not deemed to be a matter included within the concept " * * * not selected or drawn according to law."

■ Accordingly, we are of the opinion that the requirement that jurors be examined " * * * touching their qualifications * * *" has, by the express language of the subject rules, been made directory only, and that failure to substantially follow same does not render the impanelment void nor constitute a grounds for a challenge to the panel. See 38 C.J.S.

---

6. Howell Code, ch. XLVII, section 2, p. 293; Compiled Laws of 1871, ch. XLVII, section 2, p. 382; Compiled Laws of 1877, ch. 47, section 8, p. 403; Revised Statutes of Arizona, 1887, section 2176, p. 385; Revised Statutes of Arizona, 1901, title 38, ch. 3, section 2787, p. 739; Revised Statutes of Arizona, 1913, title 26, ch. 3, section 3522, p. 1222; Revised Code of Arizona, 1928, section 1909, p. 462; A.C.A.1939, section 37–106; A.R.S. section 21–301.

Grand Juries § 9, pp. 997–998; 24 Am.Jur. Grand Jury § 19, p. 845.

We proceed to consider whether the order entered below is defensible on the theory that the respondent-judge had the discretionary power to terminate the existence of the grand jury because in his opinion it had outlived its usefulness.

Rule 97(B), Rules of Criminal Procedure, provides:

"The grand jury may at any time be discharged by the court."

The broad discretionary power provided by this rule is in line with the common law powers of the court. 38 C.J.S. Grand Juries § 33b, p. 1025.

■ There is only one superior court in the State of Arizona, Arizona Constitution, article 6, section 13, A.R.S. The respondent-judge is unquestionably one of the judges of such court and therefore the argument is made that he had the authority in his discretion to terminate the grand jury regardless of what his reasons may have been in so doing.

■ The fallacy of this contention lies in the difference between a "judge" and a "court." While these terms are often used interchangeably, we believe there is a basic distinction which takes on import as to the matters now under consideration. The following is deemed to be pertinent general law:

"§ 30. Acts of Judge as Acts of Court. —The acts of the judge of a court, to become acts of the court, must have been done within his jurisdiction. Whether an act is to be performed by the 'judge' or the 'court' is generally to be determined by the character of the act rather than by the use of the terms 'judge' or 'court' in a controlling statute." 30A Am.Jur. Judges § 30, pp. 18–19.

It also seems to be good general law:

"* * * and where the constitution vests the power in the court and not in departments, which are merely for convenience, the judges hold but one and the same court whether sitting separately or together. Actions brought in any of such departments are in effect in the same court, and decisions and judgments therein are rendered by the same tribunal, although *where a case is assigned or allotted to a particular department or division, such department or division has exclusive jurisdiction thereof, unless or until the case is transferred or reassigned to another department or division, exercises all the powers of the court which it represents, and has jurisdiction to decide all the issues which properly come before it.*" (Emphasis added) 21 C.J.S. Courts § 137, pp. 211–212.

Illustrative cases applying this principle are: State ex rel. Harp v. Vanderburgh Circuit Court, 227 Ind. 353, 85 N.E.2d 254, 11 A.L.R.2d 1108, 1112 (1949); State ex rel. Magnuson v. District Court of First Judicial Dist., 125 Mont. 79, 231 P.2d 941 (1951); Lawson v. Lawson, 128 Colo. 214, 261 P.2d 167 (1953); Dunkelbarger v. Myers, 211 Iowa 512, 233 N.W. 744 (1930).

A closely-related problem was presented in Ward v. Stevens, 86 Ariz. 222, 344 P.2d 491 (1959), in which decision our Supreme Court set aside, in a certiorari proceeding, an order of a superior court judge, sitting in Maricopa county, staying a deposition to be taken in Maricopa county, but as part of the procedure in an action pending in Pinal county. Our Supreme Court analyzed this decision in Sil-Flo Corporation v. Bowen, 98 Ariz. 77, 82, 402 P.2d 22, 26 (1965), as follows:

"In the Ward case, supra, jurisdiction of the subject matter was never questioned. The jurisdiction found to be lacking was the jurisdiction to render the particular order since the case was not pending before a judge in the county in which the order complained of was made."

98 Ariz. at 82, 402 P.2d at 26.

■ We believe that the judicial responsibility pertaining to the calling, impaneling, supervision and discharging of a grand jury is comparable to that pertaining to any "proceeding" or "action" pending in

a court. A grand jury proceeding is generally regarded to be judicial in nature:

> "The grand jury is an arm of the court and its *in camera* proceedings constitute a 'judicial inquiry.'"

Levine v. United States, 362 U.S. 610, 617, 80 S.Ct. 1038, 4 L.Ed.2d 989, 995 (1960).

Also see Greenwell v. Commonwealth, 317 S.W.2d 859 (Ky.1958); Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed. 2d 609, 616 (1959); 38 C.J.S. Grand Juries § 1b, pp. 980–981; 24 Am.Jur. Grand Jury § 2, p. 832; United States v. Rockefeller, 221 F. 462 (S.D.N.Y.1914).

We note that under our law the "court" is obligated at the commencement of the grand jury's functions to charge it concerning the offenses that may be considered by it. Rule 92, Rules of Criminal Procedure. While the grand jury is in session, the "court" has the duty at all reasonable times to advise it as to its legal duties when it so requests. Rule 99, Rules of Criminal Procedure. We conceive there is as much reason for continuity in the "court" in a grand jury proceeding as there is in any other proceeding before the court. Inconsistent advice from different judges might very well result in chaos in the grand jury room. That one judge rather than all judges of the court should have the responsibility for the grand jury during its existence will ordinarily bring about wiser judicial supervision of the grand jury. That one superior court judge should review and pass upon the discretion of another judge of that same court in determining when a grand jury should be discharged does not recommend itself.

■ The only matter regularly coming before the court of the respondent-judge for disposition was a motion to quash a criminal indictment in pursuance of Rule 169, Rules of Criminal Procedure. There was no order assigning the subject grand jury proceeding to the division presided over by the respondent-judge. For the foregoing reasons, we hold that the grand jury proceeding in question had not been brought before the respondent-judge for an

exercise of his discretion to determine whether to discharge it under Rule 97(B), Rules of Criminal Procedure.

One other possible justification for the order below should be considered, though it has not been pressed in the briefs filed in this court by the real party in interest. The trial court predicated its order, in part, upon the provisions of the Arizona Constitution, article 6, section 6, as it existed prior to November 8, 1960. The provision relied upon as it read prior to the 1960 amendment was:

> "For the determination of civil causes and matters in which a jury demand has been entered, and for the trial of criminal causes, a trial jury shall be drawn and summoned from the body of the county at least three times a year."

This same section in our Constitution contained a special provision pertaining to grand juries: "Grand juries shall be drawn and summoned only by order of the superior court."

The provision pertaining to trial juries and the statute implementing it, then section 21–914, A.C.A., 1939, came before our Supreme Court for consideration in Coca Cola Bottling Company of Flagstaff v. Jones, 74 Ariz. 393, 250 P.2d 586 (1952). The court held that it was error not to sustain a challenge to the panel of trial jurors which had been held over beyond a four month period, and quoted in part from 31 Am.Jur. Jury § 75, p. 610:

> "A challenge to the array or panel may be made and sustained in a civil or criminal case for such a prejudicial defect or irregularity in the selecting and summoning of jurors as affects the integrity of the entire panel."

74 Ariz. at 397, 250 P.2d at 588.

■ In the *Coca Cola* decision, our Supreme Court indicated that the public policy behind the requirement that trial juries be impaneled three times a year is to assure " * * * jurors fresh from the citizenry." (74 Ariz. at 396, 250 P.2d 586.) The respondent-judge came to the conclusion by

a process of analogy that, there being a similar benefit to be achieved from having grand jurors " * * * fresh from the citizenry," therefore the same limitation as to trial jurors held to be mandatory in the *Coca Cola* decision was equally applicable to grand jurors.

We are unable to accept this as an absolute requirement, though we may agree with the contention that judicial discretion would not permit the holding of a grand jury in existence for inordinately long periods of time. Initially, we note that the constitutional requirement pertaining to trial juries no longer exists, the present Constitution providing merely that:

"For the determination of civil causes and matters in which a jury demand has been entered, and for the trial of criminal causes, a trial jury shall be drawn and summoned from the body of the county, as provided by law."

Ariz.Const., article 6, section 17.

However, the special provision as to grand juries, quoted above, still exists in this same section of our rewritten judicial article. The statutory provision construed in the *Coca Cola* decision pertaining to trial juries is also still with us. A.R.S. section 21–311. By express terms it pertains to "[a] trial jury." There appears to be no comparable requirement as to a grand jury. Other sections in this article of our revised code pertain to both trial and grand juries, i. e., the succeeding section A.R.S. section 21–312 pertains to " * * * a grand or trial jury * * *." The singling out of a trial jury for this requirement of A.R.S. section 21–311 leads us to the conclusion that it is the legislative intent to leave the matter of the length of service of a grand jury to the discretion of the court impaneling it. This court conceives it to be possible that in some instances a grand jury investigation may necessarily require more than four months to complete, and that the legislature may have had this in mind in not setting specific limits on grand jury sessions.

In State v. Webb and Smith, Ariz., 419 P.2d 91 (1966), our Supreme Court said:

"We also think the principles governing the selection and qualification of petit juries are applicable to grand juries *unless otherwise specifically prescribed.*" (Emphasis added)

419 P.2d at 93.

As to the problem before us, the application of ordinary rules of statutory construction, such as expressio unius est exclusio alterius, Phoenix Title & Trust Company v. Burns, 96 Ariz. 332, 395 P.2d 532 (1964), makes it reasonably clear that the legislature specifically directed the three-times-a-year requirement at trial juries and has not imposed such a limitation upon grand jury service.

At common law, the term of service of grand juries ended on the expiration of the term of court for which they were summoned. 38 C.J.S. Grand Juries § 32, p. 1022. Terms of court as to the superior court no longer exist in this state. Arizona Constitution, article 6, section 17. In states having terms of court, and in the absence of statutory provisions limiting the existence of the grand jury, there is a split of authority as to whether a grand jury may exist beyond the term of the court which called it into session. 75 A.L.R.2d 544. A substantial body of authority takes the view that a grand jury which functions and is recognized by the court after the term of court which called it into being is a sufficient grand jury de facto so as to give validity to its actions. A recent decision so holding in a jurisdiction having terms of court is Buchler v. District Court, 405 P.2d 950 (Colo.1965).

Authority as to jurisdictions having no terms of court is sparse. However, the decisions in this area of law coming to our attention hold that absent statutory limitations, the matter of the term of the grand jury lies within the discretion of the court. In re Gannon, 69 Cal. 541, 11 P. 240 (1886); Halsey v. Superior Court, 152 Cal. 71, 91 P.

987 (1907); People v. Bonelli, 50 Cal.2d 190, 324 P.2d 1 (Calif.1958). In re Gannon states:

"But while the statutory law fixes the time within the year for the court to order the selection and return of grand jurors liable to serve in the capacity of a grand jury, and limits the time in which they shall serve for the purpose of the drawing and impanelment of a grand jury, it prescribes no specific time for the drawing of the grand jury, or for its official existence after it has been drawn and impaneled. These the law seems to have left to the judicial discretion of the court; for it provides that 'every superior court whenever, in the opinion of the court, the public interest must require it, may make an order directing a jury to be drawn.' (section 241, Code Crim. Proc.;) and when the proceedings, put in motion by an order made for the purpose, result in the drawing and impanelment of a grand jury, it is, as an organized body, in the exercise of its functions, and in its official existence, subject to the control of a court that is 'always open,' and may at any time, in the exercise of its jurisdiction, order it to be discharged, (section 906, Pen. Code.)"

11 P. at 242.

It is possible that the limitation indicated in the *Coca Cola* decision arising from the biennial preparation of a new jury list by the board of supervisors, A.R.S. section 21–301, may have equal pertinency to both trial and grand juries. However, this is not before us.

For the reasons heretofore indicated, we hold that the order of discharge as to the subject grand jury was beyond the jurisdiction of the respondent-judge and that portion only of the order of October 11, 1966, is hereby set aside.

KRUCKER, C. J., and HATHAWAY, J., concur.