(63 Misc. Rep. 135.)

## PEOPLE v. ROUSS.

(Court of General Sessions, New York County. April, 1909.)

1. INDICTMENT AND INFORMATION (§ 71*)—CERTAINTY.

An indictment is sufficient if the act charged as a crime is set forth so plainly that defendant is so informed of the nature of the accusation as to enable him to prepare his defense, that the court is enabled to pronounce judgment upon conviction, and that the record is sufficient to bar a second prosecution for the same offense.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 193; Dec. Dig. § 71.*]

2. INDICTMENT AND INFORMATION (§ 110*)—REQUISITES AND SUFFICIENCY—STATUTORY OFFENSE.

Words used to define a crime, or express its ingredients, need not be strictly followed in an indictment, if words of like meaning are used.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 289, 290; Dec. Dig. § 110.*]

3. INDICTMENT AND INFORMATION (§ 75*)—REQUISITES AND SUFFICIENCY.

No indictment is insufficient for imperfection in matter of form not tending to prejudice the substantial rights of defendant.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 202; Dec. Dig. § 75.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. INDICTMENT AND INFORMATION (§ 65*)—REQUISITES AND SUFFICIENCY—SETTING FORTH EVIDENCE.

It is not the province of an indictment to set forth the evidence, and it is improper for it to do so.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 187; Dec. Dig. § 65.*]

5. FALSE PRETENSES (§ 13*)—OBTAINING SIGNATURE TO WRITTEN INSTRUMENT.

Pen. Code, § 566 (Penal Law, § 932), providing that a person who, with intent to defraud, obtains, by false pretenses, the signature of any person to a written instrument, shall be punished as therein prescribed, does not require that the writing shall answer the description of a written instrument before the signature is affixed thereto, but is satisfied if it becomes a written instrument upon the signature being appended.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 17; Dec. Dig. § 13.*]

6. WORDS AND PHRASES—"WRITTEN INSTRUMENT."

Abbott defines "written instrument" as "something reduced to writing as a means of evidence." Bouvier (16th Ed.) 1064, says: "An instrument, in the ordinary accepted sense, is a document, or writing." Burrill says: "A writing as the means of giving formal expression to some act; a writing expressive of some act (and this is the definition adopted by Webster as expressing the legal meaning of the word.)"

[Ed. Note.—For other definitions, see Words and Phrases, vol. 8, pp. 7544–7547.]

7. FALSE PRETENSES (§ 13*)—OBTAINING SIGNATURE TO "WRITTEN INSTRUMENT."

Penal Code, § 566 (Penal Law, § 932), providing that a person who, with intent to defraud, obtains, by false pretenses, a signature to a written instrument, shall be punished as therein prescribed, does not require that money or property shall be affected, or obtained, by such writing; but a return to a writ of certiorari, to review the trial, conviction, and dismissal of a patrolman from the police force, is a "written instrument" within its meaning.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 17; Dec. Dig. § 13.*]

8. FALSE PRETENSES (§ 28*)—INDICTMENT—SUFFICIENCY.

Under Pen. Code, § 718, subd. 5 (Penal Law, § 3, subd. 7), providing that, where an intent to defraud is a part of the crime, it shall not be necessary to aver an intent to defraud any particular person, makes it unnecessary for an indictment for violation of Pen. Code, § 566 (Penal Law, § 932), directed against the obtaining of a signature to a writing by false pretenses with intent to defraud to set forth the person defrauded.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 33; Dec. Dig. § 28.*]

9. FALSE PRETENSES (§ 13*)—OBTAINING SIGNATURE TO WRITTEN INSTRUMENT.

The act of the police commissioner in the preparation and certification of the return in certiorari proceedings to review the dismissal of a patrolman was ministerial, and not judicial, in so far as he was required to embody in his return copies of those documents upon which he acted, and the circumstance that the commissioner acted judicially when originally determining that the patrolman should be dismissed has no bearing upon the validity of an indictment under Pen. Code, § 566 (Penal Law, § 932), for fraudulently obtaining the commissioner's signature to a paper purporting to embody the testimony and proceedings had before the first deputy commissioner and upon which the commissioner acted.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 17; Dec. Dig. § 13.*]

10. INDICTMENT AND INFORMATION (§ 110*)—LANGUAGE OF STATUTE.

An indictment, under Pen. Code, § 566 (Penal Law, § 932), directed against the obtaining of a signature to a writing by false pretenses, which follows the language of the section in the use of the word "obtained," is sufficient, whether causing a signature to be produced and affixed to a writing, operative only when passed from the signer, was an obtainment of such signature in the absence of an allegation that the writings had so passed, or not.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 292; Dec. Dig. § 110.*]

Jacob Rouss was indicted for violation of Pen. Code, § 566 (Penal Law, § 932), providing that a person who, with intent to defraud, obtains, by false pretenses, the signature of any person to a written instrument, shall be punished, etc. Demurrer to the indictment overruled.

Charles E. La Barbier, for the demurrer.

William Travers Jerome, Dist. Atty. (E. Crosby Kindleberger, of counsel), opposed.

CRAIN, J. The defendant demurs to an indictment which charges him with a violation of section 566 of the Penal Code (now section 932 of the Penal Law). That section provides that:

"A person, who, with intent to cheat or defraud another, designedly, by color or aid of a false token or writing, or other false pretense, obtains the signature of any person to a written instrument, is punishable by imprisonment in a state prison for not more than three years, or in a county jail for not more than one year, or by a fine of not more than three times the value of the money or property affected or obtained thereby, or by both such fine and imprisonment."

The elements of this crime are: (1) An "obtainment" of something; (2) an obtainment "with design"; (3) an obtainment of a "signature," and moreover a signature to a "written instrument"; (4) an obtainment, in the alternative, either (a) by means of a false token, or (b) a false writing, or (c) some other false pretense; and (5) an obtainment with an intent, in the alternative, to either (a) cheat or (b) defraud another.

The person to be cheated or defrauded may be, but need not be, the person whose signature is obtained by the false pretenses.

The first alleged ground of demurrer is that the indictment does not conform substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure; the second alleged ground is that more than one crime is charged in the indictment within the meaning of sections 278 and 279 of the Code of Criminal Procedure; and the third alleged ground is that the facts stated in the indictment do not constitute a crime.

Upon the oral argument and in the brief submitted by defendant's counsel, no allusion is made to the second alleged ground; and it is apparent that it has been abandoned, because not sustainable. The remaining alleged grounds of demurrer have been presented together in the defendant's brief.

It appears from the indictment: That, in March, 1907, charges were made and filed in the police department of the city of New York against one Ringleman, a patrolman of police serving in the borough of Brooklyn; that thereafter such proceedings were in due course had that Ringleman was placed on trial on these charges before first deputy police commissioner O'Keeffe, and certain testimony taken; that after the termination of such hearing or trial the charges and specifications against Ringleman and a paper and writing "being and purporting to be a transcript of the testimony taken and proceedings had upon such hearing or trial" was transmitted, in due course, to Police Commissioner Bingham for final determination; that thereafter Commissioner Bingham considered such charges, specifications, testimony, and proceedings, and thereupon determined that Ringleman was guilty of said charges, and sentenced him to be dismissed from the police force, and caused an order to be duly entered so dismissing him; that afterwards Ringleman, claiming to be aggrieved by such determination and order, petitioned and obtained from the Supreme Court in the county of Kings a writ of certiorari, directed to the commissioner of police of the city of New York, "commanding him to certify and return to the clerk of said court (being the county clerk of Kings county) all proceedings had and remaining before him in any wise relating to said trial, conviction, and dismissal, including all orders, affidavits, petitions, notices, writing, documents, and other proceedings before him," and directing that such return be sent to such clerk's office within 20 days after the service of the writ, exclusive of the day of service, and that such return was required in order that the court might thereupon cause to be done what should be right and according to law; that thereafter there was prepared and submitted to Commissioner Bingham for his signature a certain written or proposed answer to said writ, including certain schedules to be annexed to and to form part of the same, and one of such schedules purported to be a transcript of the proceedings theretofore had in the police department in connection with the Ringleman matter. The indictment purports to set forth a copy of the papers which were before Commissioner Bingham at the time when and on which he dismissed Ringleman, and also a copy of the papers which it is alleged were so "prepared and presented to" him for his signature as being the return to be made by him. A comparison of these papers shows that the paper purporting to embody the testimony and proceedings before First Deputy Commissioner O'Keeffe, and on which Commissioner Bingham acted in dismissing Ringleman, differs from the paper purporting to be a copy of it and which, the indictment charges, was submitted to Commissioner Bingham, as a copy of it and for the purpose of causing it to form a part of the commissioner's return to the writ.

The indictment then charges that "afterwards, to wit, on the 4th day of October, in that year, Jacob Rouss did, at the county of New York, with intent to cheat and defraud," designedly, feloniously, falsely, and fraudulently pretend and represent to Commissioner Bingham that the paper and writing in the indictment last set forth and forming a part of the proposed answer or return to the writ of certiorari was a transcript of the testimony taken and proceedings had

upon the Ringleman hearing and trial, and was a copy of that paper
and writing which purported to be a transcript of the testimony taken
and proceedings had upon such hearing and trial and which, after the
termination of said trial, hearing, and investigation, was so transmit-
ted to Commissioner Bingham, and which paper is the paper first set
forth in the indictment. The indictment then proceeds to say that:

"In truth and in fact the said paper was not a transcript of the testimony
taken and proceedings had upon such hearing and trial and that in truth and
in fact the said pretenses and representations so made by the defendant to
Commissioner Bingham were then and there, in all respects, utterly false,
fraudulent, and untrue, and made designedly to cheat and defraud, and for
the purpose of obtaining the signature of Commissioner Bingham to the said
proposed answer or return as the defendant at the time of the making of the
same then and there well knew; that the defendant, on the 4th day of Octo-
ber, in the year mentioned, with intent to cheat and defraud, designedly, by
color and by aid of such false writing and such false and fraudulent pre-
tenses, did feloniously obtain the signature of Commissioner Bingham to a
certain written instrument, to wit, to the said proposed return and answer to
the said writ of certiorari; and that he, the said Commissioner Bingham, then
and there believing and relying upon the said false and fraudulent pretenses
and representations of the defendant, and being deceived thereby, was in-
duced, by reason of the said false and fraudulent pretenses and representa-
tions, to sign and did then and there sign and subscribe his signature to the
said proposed answer or return."

The office of an indictment is to inform a defendant of the crime
with which he is charged, and why he is so charged. An indictment
must therefore contain a plain and concise statement of the act con-
stituting the crime without unnecessary repetition. The substance of
all that is requisite to the offense must be alleged. No essential ele-
ment of the crime can be omitted without destroying the pleading.
Such an omission cannot be supplied by intendment or implication.
The charge must be made directly and not inferentially or by recital.
It is sufficient if the act charged as a crime is set forth so plainly, cer-
tainly, and concisely that: (1) The defendant is so informed of the
nature of the accusation against him as to enable him to prepare his
defense; that (2) the court is enabled to pronounce judgment upon
a conviction according to the right of the case; and that (3) the rec-
ord is sufficient to bar a second prosecution for the same offense.

Words used in the law to define a crime or express its ingredients
need not be strictly followed in the indictment, if words of like mean-
ing are used in their place. No indictment is insufficient by reason
of any imperfection in matter of form which does not tend to the prej-
udice of the substantial rights of the defendant upon the merits. It
is not the province of an indictment to set forth the evidence estab-
lishing the charge, and it is not merely unnecessary, but improper for
it to do so. Code Cr. Proc. §§ 276, 284, 285; People v. Dimick, 107
N. Y. 13, 14 N. E. 178; People v. Willis, 158 N. Y. 392, 53 N. E. 29;
People v. Lowndes, 130 N. Y. 455–463, 29 N. E. 751; People v. Al-
bow, 140 N. Y. 130–134, 35 N. E. 438; United States v. Hess, 124
U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Tuttle v. People, 36 N. Y.
431; People v. Clark, 8 N. Y. Cr. R. 169, 14 N. Y. Supp. 642.

It is argued in support of the demurrer: That it appears upon the
face of the indictment that the signature was not put to a "written

instrument" within the meaning of section 566; that the indictment is not good in substance, in that it should, but does not, falsify each pretense which it is proposed to rely on at the trial; that there are insufficient allegations to show the character and circumstances of the false pretenses and how they were effectual to accomplish the fraud; that it should, but it does not, appear on the face of the indictment that the accused obtained something of value from the person to whom the fraudulent representations were alleged to have been made; that it appears on the face of the indictment that, if there was a false representation, Commissioner Bingham was only cheated by it into performing his duty; that, for this reason, the representation was not within the statute; that it does not appear from the indictment that there was any intent to cheat or defraud anybody or that anybody was cheated or defrauded; that the indictment is faulty in that it should have alleged who was cheated or defrauded. It is further argued that the act of Commissioner Bingham was judicial and not ministerial, and that, for this reason, the case of People ex rel. Phelps v. Court of Oyer and Terminer, 83 N. Y. 436, supposed to be relied upon by the prosecution, does not apply.

Considering the contentions in the order stated, the statute does not require that the writing shall answer to the description of a written instrument before the signature is affixed to it. It is satisfied if it becomes a written instrument upon the signature being appended to it. A completed document, already efficient because, attested by a signature, would rarely, if ever, figure in the commission of the offense under the section involved.

The argument in support of the contention that that which Commissioner Bingham signed at the defendant's alleged instigation was not a written instrument is based, in part, upon two definitions, the first from Funk & Wagnall's dictionary, the second from Webster's. It is based, in part, upon the assertion that the paper so signed was a "pleading" and the assumption that a pleading is not a written instrument. It is based, in part, upon the fact that in Indiana it has been held that a "judgment" is not a written instrument, and in California that a "lis pendens" and a "writ of attachment" are not written instruments; and it is urged that by analogy it should be held in this state that a return to a writ of certiorari is not a written instrument, as those words are used in the statute to be construed. It is further contended, in this connection, that that part of the section relating to punishment by fine shows that the Legislature did not have in mind a paper such as that which it is charged Commissioner Bingham was induced to sign. The argument in this regard is that no "money" or property was "affected" or "obtained" by such paper, and that therefore the element measuring the amount of the fine is wanting, in consequence of which, in the event of a conviction, punishment by way of fine could not be imposed. The definition from Funk & Wagnall's Dictionary, as given in the defendant's brief, tends to sustain his contention. The definition from Webster's dictionary as given in the defendant's brief is but partial and not complete. The omitted part militates against the defendant's contention, and it is significant that the part of the definition given in Webster which so militates

against the defendant's contention is the meaning which Webster says attaches to the word when used in law, to wit, "a writing as the means of giving formal expression to some act; a writing expressive of some act."

Outweighing the definition as given in Funk & Wagnall's are the definitions given in the law dictionaries. Thus Abbott defines a "written instrument" as "something reduced to writing as a means of evidence." Bouvier in his law dictionary ([16th Ed.] 1064) says:

"An instrument in the ordinary accepted sense is a document or writing."

Burrill under the head of "instrument" says:

"A writing as the means of giving formal expression to some act; a writing expressive of some act (and this is the definition adopted by Webster as expressing the legal meaning of the word)."

"I am not aware," said Hawkins, J., in Queen v. Reilly, 1 Q. B. (1896) 309, "of any authority for saying that in the law the term 'instrument' has ever been confined to any definite kind of legal documents. In the absence of such authority I cannot but think the term ought to be interpreted according to its generally understood and ordinary meaning, as stated in the dictionaries of Dr. Johnson and of Webster. * * * When used generally Dr. Johnson speaks of it as 'that by means whereof something is done'; and Webster as 'one who, or that which, is made a means, or caused to serve a purpose.'" This language of Judge Hawkins was approved by Judge Blanchard in Loch v. Mayer, 50 Misc. Rep. 442, 448, 449, 100 N. Y. Supp. 837. It is a construction in substantial harmony with the meaning given to the same words in section 513 of the Penal Code (Penal Law, § 880) in its relation to forgery in the second degree and with the definition found in section 12 of the statutory construction law, now General Construction Law, § 56 (Laws 1909, c. 27).

The paper signed by Commissioner Bingham was a paper expressive of an act. It was a paper which became binding upon Commissioner Bingham, and therefore, within the language of all the definitions, except that in Funk & Wagnall's, a written instrument. The paper signed by Commissioner Bingham was what is technically known as an "answer" or "return" in certiorari proceedings. It was a pleading in a qualified sense; but it was also more than a pleading. It was an official certification of an existing record. Code Civ. Proc. § 2134. If a writ is an instrument in writing, as Burrill and Webster both say, no reason suggests itself why a return to a writ is not also. The argument based upon analogy is not strong. The papers referred to in the decisions cited by the defendant are concededly different in character from that signed by Commissioner Bingham. They are offset by decisions to the effect that other writings are written instruments, as, for example, a by-law (In re Henderson, 29 Ont. 669), a sheriff's certificate of sale (Foorman v. Wallace, 75 Cal. 552, 17 Pac. 680), and a telegram (Regina v. Reilly, supra).

It is probable that the written instrument as signed by Commissioner Bingham was not the particular kind most immediately in the mind of those who framed the section. That part of the section providing for the imposition of a fine primarily describes a class of in-

struments differing from the one signed; and, if such language had immediately followed the words "written instrument" as found in the section, instead of merely appearing where the punishment is prescribed, they might have been efficient to exclude from the operation of the law such an instrument as Commissioner Bingham signed. Most likely, but not so certainly, they might have had this effect if the provision relating to punishment by fine had been the only one as to punishment contained in the section. The only effect that can be given to them, however, standing where they do, is to render punishment by fine not possible in the event of a conviction in the case at bar.

Novel circumstances do not require the court to disregard the plain language of the Code in a case clearly falling within the Code provision. People v. Abeel, 182 N. Y. 422, 75 N. E. 307, 1 L. R. A. (N. S.) 730. A perusal of the indictment shows that the other objections taken to it are likewise untenable. Thus it is erroneous to say that the pretenses are not described. The pretenses are described. The pretenses as described were that a certain paper was a true copy of another; whereas, it is charged that it was not. The falsity of the pretenses as made is specifically charged in the indictment. It is erroneous to say that the character and circumstances of the false pretenses are not alleged. What they were, when they were made, where they were made, how they were made, and why they were made are fully set forth; and, if there be criticism, it is that the pleader has gone into unnecessary detail. The indictment also shows how the pretenses were effectual to accomplish the fraud. The law does not make (as seems to be erroneously suggested by the defendant) the obtainment of something of value by the accused an element in the offense. The act may be criminal and yet unproductive of pecuniary profit. The suggestion that the commissioner was merely cheated by fraud into the performance of his duty loses sight of the fact that it was his duty to make a true return, and it is charged that he was cheated into making a false one. The suggestion that it does not appear from the indictment that there was an intent to cheat or defraud anybody, or that anybody was cheated or defrauded, is likewise without merit. It is plain from the indictment, both specific averment and statement of supporting facts from which the conclusion necessarily follows, that there was an intent to cheat or defraud the commissioner. It is, moreover, plain that the act charged was calculated to deceive the court by means of a false return and, incidentally, to cheat and defraud the city of New York in the contingency that, by reason of the falsity of the return, it should become obligated by the action of the court, induced by deception, to reinstate Ringleman. The act charged was not a mere deception, but a deception for an immoral and an unlawful purpose, and therefore distinguishable from deceptions of the character commented on by Mr. Justice Dowling in the case of People v. Hegeman, 57 Misc. Rep. 295, 107 N. Y. Supp. 261.

In reply to another suggestion alluded to as being made by the defendant, it is proper to say that the statute makes it unnecessary to set forth the name of the person cheated or defrauded. Pen. Code, § 718, subd. 5; Penal Law, § 3, subd. 7.

The act of Commissioner Bingham in the preparation and certification of the return was ministerial, and not judicial, in so far as he was required to embody in his return copies of those documents which had been before him and upon which he acted, at the time when he took the action dismissing Ringleman. The circumstance that the commissioner acted judicially when originally determining that Ringleman should be dismissed, while commented upon at length by counsel, has no bearing upon the validity of the indictment.

Upon consideration of the demurrer, the query suggested itself as to whether, within the meaning of the law, the defendant had "obtained" Commissioner Bingham's signature; that is to say, whether causing a signature to be produced and affixed to a document operative only as and when the same might pass from the signer was an obtainment of such signature in the absence of a specific allegation that the document had so passed. The question is interesting and possibly doubtful. It is perhaps plain that the pleader thought that a signature was, within the meaning of the law, obtained when it was brought into existence under circumstances as detailed in the indictment. This view may be correct. If incorrect its error can only be availed of in connection with the production of evidence upon the trial for the reason that the indictment, in the use of the word "obtained," follows the language of the statute, and is therefore sufficient as a pleading, whatever may be the true meaning of the word; that is to say, if the word "obtained" means not merely causing a signature to be brought into existence, but the passage of it from the dominion of the signer, then such meaning must be attached to it as used in the indictment, and as so attached the indictment is sufficient. If, on the other hand, the word "obtainment" has the narrower signification (which most likely was in the mind of the pleader), then the indictment is sufficient.

Recurring now to the statutory test as heretofore stated and as explained and applied in adjudications, it is seen that the indictment assailed contains a plain and concise statement of the act constituting the crime, and that such statement is without unnecessary repetition. The substance of all that is requisite to the offense is alleged. No essential element is omitted. The charge is direct. It is not inferential. It is not by way of recital. The indictment informs the defendant of the nature of the accusation. It enables him to prepare for his defense. It will enable the court to pronounce judgment in the event of a conviction, and the record will bar a second prosecution for the same offense.

The demurrer is overruled.

Demurrer overruled.