## STATE OF INDIANA *v.* HUEBNER

[No. 28,831. Filed March 12, 1952. Rehearing denied April 9, 1952.]

462

*J. Emmett McManamon,* Attorney General, *John Ready O'Connor,* Deputy Attorney General, *David P. Stanton,* Prosecuting Attorney, Thirty-first Judicial Circuit, *Gilbert Gruenberg,* Special Prosecuting Attorney, and *James J. Clark,* Deputy Prosecuting Attorney, for appellant.

*Albert H. Gavit,* of Gary, for appellee.

GILKISON, C. J.—Appellee, Huebner, was charged by indictment in the Criminal Court of Lake County with unlawfully, knowingly and with intent to defraud the City of Hammond, a municipal corporation of the state, procuring the signature of Honorable Joseph V. Stodola, Jr., Judge of Lake Superior Court, Room 1 to a certain agreed special findings of fact and conclusions of law in a certain cause No. 53787, entitled J. Martin Antrim Etc. v. City of Hammond, Indiana, then pending in said court, which writing it is alleged was false. The writing is copied in the indictment. It is lengthy, consuming sixteen printed pages in the State's brief. It is O. K.'d by appellee as attorney for plaintiff, and by

H. H. Stilley as attorney for defendant city. It is dated November 25, 1946.

The indictment charges that the false pretenses and falsity of said writing consisted of the following:

"Said defendant falsely, knowingly and designedly prepared said form of special findings of fact and conclusions of law so that it falsely recited that said plaintiff in said cause, J. Martin Antrim, owned bonds and coupons, and series thereof, as more fully specified in the copy of said writing above set forth, which he did not own; that said false statement of ownership consisted of the fact that said plaintiff did not own bonds numbered 3 to 7 inclusive in series 7, nor did he own bonds numbered 3 to 7 inclusive in series 10, as stated in said writing, nor did he own the coupons stated in said writing as owned by him; that said defendant then and there well knew of the falsity of said writing in each of the aforesaid respects, and he then and there designedly prepared said writing in said false form for the purpose of it being used, and intending that it would be used, to deceive said Judge as hereinafter stated; that after preparing said false writing said defendant then and there took it before said Judge in open court in said cause and then and there falsely represented to said Judge that all the recitals and statements therein, including those false ones above described, were true, and said defendant then and there made to said Judge each of the aforesaid false representations of fact concerning the ownership of said bonds and coupons, well knowing the falsity thereof;

"That said defendant in his said capacity as such attorney in said cause made each of the aforesaid false representations and false pretenses to said Judge as representations of the existing facts relative to said cause, and said Judge then and there accepted and relied on each thereof as being the existing facts relative to said cause; that each of said representations were then and there material to the act then to be performed, and which was then performed by said Judge, of

signing said written instrument; that said false representations were then and there made by said defendant to said Judge with the intent and for the purpose of deceiving said Judge and inducing him to sign said written instrument; that said Judge believed and relied on said false representations and was thereby deceived and induced to sign said written instrument, namely, said form of agreed special findings of fact and conclusions of law, and was also thereby induced to file and enter same in the records and upon the order book and judgment docket of said court as said court's special findings of fact and conclusions of law in said cause, which recited that said plaintiff was entitled to a money judgment against said City as more fully set forth in the above copy thereof; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana."

Without reciting all the proceedings and action taken in the case, we deem it sufficient to say that a motion to quash the indictment was duly filed which, omitting caption and signature, is as follows:

"Defendant, Carl A. Huebner, moves the court to quash the indictment against him in this cause on each of the following grounds, separately and severally:

"1. That the facts stated in the indictment or affidavit do not constitute a public offense.

"2. That the indictment contains matter which, if true, would constitute a legal justification of the offense, or a legal bar to the prosecution.

"3. That the indictment does not state the offense with sufficient certainty.

"WHEREFORE, for each of the foregoing reasons, separately and severally, he prays that the indictment in this cause be quashed."

Thereafter a hearing on the motion was had before a special judge regularly selected to preside in the

cause, and after arguments were heard, the matter was taken under advisement, and on June 16, 1951 the motion to quash was sustained and the indictment was adjudged quashed. From this judgment the appeal is taken by the state.

Error assigned is that the court erred in quashing the indictment.

The pertinent parts of the criminal statute upon which the indictment is based are as follows:

> "Whoever, with intent to defraud another, designedly, by color of any false token or writing, or any false pretense, obtains the signature of any person or persons, firm or corporation to any written instrument, . . . shall, on conviction, be imprisoned in the state prison not less than one [1] year nor more than seven [7] years, and fined not less than ten dollars [$10.00] nor more than one thousand dollars [$1,000], or, at the discretion of the court or jury trying the cause, shall upon conviction thereof, be imprisoned in the county jail not more than six [6] months nor less than ten [10] days, and fined not more than fifty dollars [$50.00] nor less than ten dollars [$10.00]."

§10-2103, Burns' 1942 Replacement.

Passing without determining a number of objections to the record, and the brief of appellant, we direct our attention to the material questions attempted to be presented by the appeal.

(1). A question presented by the appeal is: Whether or not an agreed stipulation of facts and conclusions of law thereon in a civil lawsuit, O.K.'d by the record attorneys for the parties plaintiff and defendant, can be a "false token or writing" upon which a valid charge of obtaining the signature of the judge by false pretense may be based?

The effect of a finding and judgment bearing the written O.K. of a defendant's attorney was before this

court in the recent case of *McNelis* v. *Wheeler* (1947), 225 Ind. 148, 73 N. E. 2d 339. After reviewing a number of authorities we held in substance that when a proposed finding and judgment is prepared by plaintiff, is O.K.'d by defendant's attorney and is handed to the judge for entry, the court has a right to regard it as correct and to have it entered.

When, as in the instant case, the parties plaintiffs and defendants stipulate the finding of facts and the conclusions of law and hand these stipulations to the judge in open court, bearing the approval of each of the parties, evidenced by the written O.K. of their attorneys of record, the court is not called upon to perform a judicial act. The writing is in fact a consent finding and judgment, and the duty of the court is ministerial—to have the writing entered as agreed upon. *State ex rel. Harp* v. *Vanderburgh Circuit Court* (1949), 227 Ind. 353, 360, 85 N. E. 2d 254; *McNelis* v. *Wheeler* (1947), 225 Ind. 148, 153, 73 N. E. 2d 339 and authorities there cited, *supra.*

In the absence of fraud, parties who are competent to contract and not standing in confidential relations to each other may agree to the rendition of a judgment or decree respecting any right which may be the subject of litigation. When such a decree is entered it is a decree by consent. A consent decree is not a judicial determination of the rights of the parties. It does not purport to represent the judgment of the court, but merely records the agreement of the parties with respect to the matters in litigation. Such decree cannot be reviewed by appeal. *Bergman* v. *Rhodes* (1929), 334 Ill. 137, 142, 165 N. E. 598, 65 A. L. R. 344, 349; *Indianapolis, Decatur and Western Ry. Co. et al.* v. *Sands et al., Trustees* (1892), 133 Ind. 433, 435 et seq., 32 N. E 722; *Hudson* v. *Allison et al.*

(1876), 54 Ind. 215, 216; *Fletcher* v. *Holmes* (1865), 25 Ind. 458, 462; *Adler* v. *VanKirk Land & Construction Co.* (1896), 114 Ala. 551, 561, 21 So. 490, 62 Am. St. Rep. 133, 138, 139; 2 Am. Jur. Appeal and Error §31, p. 868; 49 C. J. S., Judgments, §173, p. 308, 309.

That the judgment was rendered by consent of the parties does not detract from its dignity, or lessen its conclusiveness as an adjudication between the parties, but the consent is a waiver of error precluding a review upon appeal. *Adler et al.* v. *VanKirk Land & Construction Co.* (1896), 114 Ala. 551, 561, *supra; The Indianapolis, Decatur and Western Ry. Co. et al.* v. *Sands et al., Trustees* (1892), 133 Ind. 433, 441, *supra.*

Since the written instrument in question was but an agreement on a stipulation of facts and conclusions of law that the parties plaintiff and defendant each for himself and itself understandingly entered into, by and through their respective attorneys at law, neither, except for fraud, can attack the action which they have caused the court to take. That there may have been errors in the agreed stipulation of facts or in the agreed conclusions of law cannot matter now for the parties had a right to make the stipulations as they desired. It was their law suit. 49 C. J. S., Judgments, §173, p. 308, *supra.* The written instrument in question was not such a "false token or writing" that to secure the signature of the judge thereon, could sustain a charge of false pretense.

(2). Moreover when this agreed stipulation was presented to the trial judge, he had no judicial function to perform. He had only the ministerial duty of ordering the agreement entered of record. Such a decree does not represent the judgment of the court. It is merely the agreement of the parties, consented to by the court. Because it is not a judicial action it

may not be appealed. On appeal the action of a lower court is reviewed to determine whether it committed error. If an appeal should be allowed from a consent decree, the appellate court would examine the record not to determine whether the lower court committed error, but to determine whether or not the parties erred in making the stipulation or in giving their consent thereto. Appellate courts do not have such authority. *McNelis* v. *Wheeler* (1947), 225 Ind. 148, 153, *supra; Bergman* v. *Rhodes* (1929), 334 Ill. 137, *supra.*

The judge before whom the action was pending could not have been deceived by the agreed written stipulation presented to him by appellee as the attorney for plaintiff, and by the attorney for the defendant city. It required the judge to perform a ministerial duty only—to cause the instrument to be placed of record. The interested parties in the action had by stipulation agreed upon all the findings of fact and conclusions of law.

There is no averment in the indictment even indicating that the city of Hammond does not owe the unpaid principal and interest on the bonds in question. The only averment in the indictment on this subject is that J. Martin Antrim did not own the particular bonds mentioned and did not own the coupons "stated in said writing as owned by him." There is nothing in the indictment indicating who does own these outstanding unpaid bonds or the outstanding unpaid coupons mentioned. If the city owed someone the debt evidenced by the bonds and coupons mentioned, it could not be defrauded by an agreed finding of facts, conclusion of law and judgment declaring that fact.

Paragraph 3 of the agreed stipulation of facts contained in the indictment states:

"That the plaintiffs as the holder and owners of bonds and coupons of each of Series 7 to 10 in-

clusive, filed this action on September 3, 1941, for and on behalf of themselves and all other persons, firms and corporations similarly situated holding and owning bonds pursuant to said improvement resolution."

From this agreed stipulation of facts it is conclusively shown that the action was a class action and therefore it could not matter to the city of Hammond whether the bonds and coupons mentioned in the indictment were owned by the plaintiff, Antrim, by some other plaintiff, or by a member or members of the class described in paragraph 3 of the agreed stipulation of facts noted above. Diversity of ownership, or even error in identifying the owner or owners of some of the outstanding bonds or coupons in the agreed stipulation of facts could not result in defrauding the city. Under the law (Sec. 48-2721, Burns' 1950 Replacement) these bonds are negotiable as inland bills of exchange and the city will be protected as against all contenders when it pays its obligation to the bearer of the bonds and coupons. We cannot see that it is possible for the city to be defrauded by the acts pleaded in the indictment.

The judgment of the Criminal Court of Lake County quashing the indictment is affirmed.

Draper, J., not participating.

Bobbitt, J., concurs with opinion.

Emmert, J., dissents with opinion.

## CONCURRING OPINION

BOBBITT, J.—I concur in the result reached in the majority opinion but do not agree with the statement of the opinion that the Judge before whom the action was pending could not have been deceived by the

agreed written stipulation because the placing of his signature thereon may have been only a ministerial duty. It seems to me that there are numerous circumstances where the Judge of a court might be misled and fraudulently induced to perform some ministerial duty.

It seems clear to me that the facts stated in the indictment do not constitute an offense within the provisions of §10-2103, Burns' 1942 Replacement, and the action of the trial court should be sustained solely upon this ground.

An agreed statement of facts and conclusions of law such as are here under consideration are not "written instruments" within the meaning of §667 of ch. 169 of the Acts of 1905, as amended by §1 of ch. 228 of the Acts of 1907, §10-2103, Burns' 1942 Replacement.

Appellant contends that an agreed statement of facts and conclusions of law based thereon, which are approved by attorneys representing all the parties to the action, as is the case here, are such instruments as might be the foundation of a person's liability or the evidence of his right and hence "written instruments" within the meaning of said section. I do not agree with this contention. *A statement of facts* may be said to be the conclusion and determination of liability rather than its foundation. It is difficult to see how either it or the conclusions of law could be said to be evidence competent to establish any right. See *State* v. *Hazzard* (1907), 168 Ind. 163, 168, 80 N. E. 149; *Shannon* v. *The State* (1887), 109 Ind. 407, 10 N. E. 87.

The question of whether or not a judgment is a written instrument within the meaning of said statute has not been passed upon by this court. However, under the definition of "written instrument," obtaining in other jurisdictions neither, an agreed statement of facts, conclusions of law based thereon, nor a judg-

ment can be included within the meaning of "written instrument" as used in said statute. 44 C. J. S., Instrument, pp. 419, 420; Cf: *Patterson* v. *Churchman et al.* (1890), 122 Ind. 379, 385, 386, 22 N. E. 662, 23 N. E. 1082; *Lytle* v. *Lytle* (1871), 37 Ind. 281; *Wilson* v. *Vance, Adm'r.* (1877), 55 Ind. 584; *Parsons, Adm'r.* v. *Milford, Adm'r.* (1879), 67 Ind. 489, 497.

Appellee may be guilty of a vicious fraud upon the court, but that does not of necessity make him guilty of attempting to secure the signature of a Judge to an agreed stipulation of fact and conclusions of law based thereon, by false pretenses under the provisions of §10-2103, Burns' 1942 Replacement.

Courts should not require protection from attorneys against the practice herein alleged, but if such protection is needed it is available through contempt proceedings.

The trial court did not err in sustaining the motion to quash and, for reasons above stated, the judgment should be affirmed.

## DISSENTING OPINION

EMMERT, J.—It seems to me that appellee Huebner by a false pretense did obtain the signature of the judge to a written instrument with intent to defraud the city of Hammond as prohibited by the first offense defined in §10-2103, Burns' 1942 Replacement. Appellee admits that the fact no money was charged as collected would not prevent the offense from being committed as prohibited by the statute.

The argument that a judgment is not a written instrument in Indiana, and that therefore a finding of facts and conclusions of law thereon, upon which the judgment must be based, is therefore not a written in-

strument, fails to correctly analyze the cases on written instruments in this state.

The early cases after the Revised Statutes of 1852 construed a judgment as a written instrument, and required that a copy thereof be filed with the pleading when it was founded on such instrument. This rule was changed in *Lytle* v. *Lytle* (1871), 37 Ind. 281. But a careful examination of this case discloses that this court did not hold a judgment was not a written instrument, but it did hold that it was not a written instrument within the meaning of the statute because it was not such a written instrument that the original could be filed with the pleading. The exact language of *Lytle* v. *Lytle, supra,* is set out in the note,[1] and

---

[1] "It is true that it has been repeatedly decided by this court, that it is necessary in bringing an action upon a judgment, or in setting up a judgment as a defence or by way of reply, that a copy of the judgment shall be filed with the pleading; and these rulings have been based on 2 G. & H. 104, sec. 78, which provides, that 'when any pleading is founded on a written instrument or on account, the original, or a copy thereof, must be filed with the pleading,' etc.; but, after mature consideration, we have come to the conclusion that a proper construction of that section of the code, and a regard for convenience and economy in practice, require us to hold that a judgment is not a 'written instrument' within the meaning of that section. Deeds, mortgages, bonds, written contracts, promissory notes, bills of exchange, etc., are written instruments. Judgments are in writing, but are not usually called written instruments. *The legislature,* in framing and enacting the section, evidently *had in view only instruments of which 'the original, or a copy,' might be filed,* as the party might elect. The original of a judgment cannot be filed. It is frequently the case that the judgment which is pleaded is a judgment of a court of the same county, and often it is a judgment of the same court in which the pleading is filed. In such cases it is unnecessarily inconvenient and expensive to the party to be compelled to procure a transcript of the record pleaded, which must be a complete record, to be filed with the pleading. If the record is of the court of another county in the State, or of a foreign state, the party pleading it will, of

an examination thereof discloses that the case still holds that a judgment is a written instrument. The case of *People* v. *Rouss* (1909), 118 N. Y. S. 433, 438, is in error in assuming that Indiana has held that a judgment is not a written instrument. Nor has §2-1031, Burns' 1946 Replacement (the present statute on setting forth written instruments when a pleading is founded thereon) been construed as limited to instruments of trade such as bonds, bills, receipts, promissory notes, drafts or checks. Before the enactment of a special statute (§48-402, Burns' 1950 Replacement), it was held that a copy of a city ordinance must be set out as a written instrument. Watson's Works' Indiana Pl. & Pr., §388; 1 Lowe's Works' Ind. Practice §12.65, p. 407. And assessments for public ditches are such instruments. "The same is true as to actions to enforce street improvement and other municipal improvement liens, except where otherwise provided by statute." 1 Lowe's Works' Ind. Practice §12.65, p. 408, and authorities cited. The recorded notice of an intention to hold a mechanic's lien must be pleaded as a written instrument.[2] See also 2 Gavit, Ind. Pl. & Pr., §233. A special finding of facts and conclusions of law is as much a written instrument as a judgment which must be based thereon and conform thereto.

---

course, have to obtain a copy as evidence, whether it be filed with the pleading or not. It results from this ruling that the case of *Reasor* v. *Raney*, 14 Ind. 441; *Norris* v. *Amos*, 15 Ind. 365, and other cases following them, are overruled." (Italics added.) *Lytle* v. *Lytle* (1871), 37 Ind. 281, 283.

[2] "Appellant insists that the recorded notice of an intention to hold a lien under this act is the foundation of the suit for the enforcement of a lien, and that such notice, or a copy thereof, must be filed as an exhibit with the complaint. This contention must be sustained." *Indiana Sand, etc., Co.* v. *Donovan* (1910), 174 Ind. 164, 166, 91 N. E. 597.

A judge of a court is a person although he is an official person. The findings and conclusions must be signed by the judge. II Watson's Works' Pr. and Forms §1597, pp. 239, 240; 3 Lowe's Works' Ind. Practice §53.28, pp. 306, 307; 2 Gavit, Ind. Pl. & Pr., §432, p. 2365 and cases therein cited. When they are so made and signed and filed they become the decision of the court under §2-2102, Burns' 1946 Replacement. It is a judicial act and to be distinguished from the recording of the decision so made or announced. The case of *State ex rel. Harp.* v. *Vanderburgh Circuit Court* (1949), 227 Ind. 353, 85 N. E. 2d 254, distinguished between the pronouncement of the decision and the recording of the same. The recording of the same was the signing of the entry of the same where a general finding only was had. There was no special finding involved in the Harp case, *supra.*

So far as I know it has never been held that any court or the judge thereof is bound by any collusive agreement of both parties, or by any agreement obtained by fraud of one of the parties. It must always be remembered that in this case the city of Hammond is a public corporation, and has no powers except those granted by statute or necessarily implied to carry out express grants of power. The attorney for the city of Hammond could have no greater power. A city attorney is an officer of limited authority the same as the Attorney General. See *State ex rel. Young* v. *Niblack* (1951), 229 Ind. 596, 99 N. E. 2d 839; *Davis* v. *Pelley* (1952), 230 Ind. 248, 102 N. E. 2d 910. Neither he nor the city could consent to a fraudulent finding or judgment. For the purposes of determining the correctness of the court's ruling on the motion to quash the indictment, the special findings and conclusions, as to counsel for the city, were either collusive, or a fraudulent im-

position on him and his client. Either form of this dilemma is fatal to any contention that the court was bound by the fraudulent entry, or that the accuracy or inaccuracy of the stipulated facts was immaterial to the court.

Stipulations by the parties or their counsel are not enforced by the courts if they are "unreasonable, or in contravention of good morals or of sound public policy." *Continental Casualty Co.* v. *Lloyd* (1905), 165 Ind. 52, 55, 73 N. E. 824. The correct rule has been tersely stated in 50 Am. Jur. 612, §12, as follows: "Thus, it has been said that a court cannot be compelled to stultify itself by solemnly adjudging an absurdity or a falsehood because parties stipulated for such act." See also 60 C. J. 48 and 60 C. J. 91.[3]

The argument that the statute on false pretenses should not be construed to cover the acts charged in the indictment because Huebner was guilty of contempt of court is not persuasive. If a litigant in open court should shoot the judge on the bench with the intent to kill and murder him, the offender would still be guilty of an assault and battery with intent to commit a felony even though he was also committing a direct criminal contempt.

As was stated in *People* v. *Rouss* (1909), 118 N. Y. S. 433, 440, *supra,* "Novel circumstances do not require the court to disregard the plain language of the code in a case clearly falling within the code

---

[3] "As elsewhere shown, even though the agreement relates to matters which may be validly made the subject of stipulation, the court, in its discretion, may set aside a stipulation on numerous grounds, such, for instance, as fraud, undue influence, or collusion, mistake, false statements innocently made, inadvertence or improvidence in making the stipulation, and on other grounds. Moreover, the existence of any of these grounds would constitute sufficient reason for refusing to enforce a stipulation on application of the party relying thereon." ·60 C. J. 91.

provisions." The fraud charged in the indictment is so rarely attempted that there are few authorities on the subject matter. Such evil and depraved acts are seldom attempted by an attorney, a sworn officer of the court, whose first duty it is to be honest with the court and assist it in doing right and justice. Fraud on the court or judge thereof does not depend upon financial loss to the judge or court. *Sanders* v. *State* (1882), 85 Ind. 318. But the evils of such conduct by far transcend the defrauding of widows and orphans, for the very foundation for administering justice between litigants is the court's ability to ascertain the facts.

Since the state was not a party to the suit to collect on the bonds and coupons, it is not concluded or estopped by any judgment which may have been entered pursuant to the findings and conclusions. The proceedings set out in the indictment do not import absolute verity in the face of the allegations of fraud and deceit and the criminal offense committed against the state in a proceeding to which it was not a party.

Huebner, under the indictment, is charged with intending the natural and probable consequences of his fraudulent act. *Bleiweiss* v. *State* (1918), 188 Ind. 184, 189, 119 N. E. 375, 122 N. E. 577; *Pitts* v. *State* (1939), 216 Ind. 168, 171, 23 N. E. 2d 673. The natural and probable consequences of the special findings and conclusions would be a judgment upon which Huebner would collect money from the city of Hammond. The indictment charged that Huebner falsely and knowingly prepared the special findings of facts and conclusions of law so that it falsely stated that J. Martin Antrim owned certain bonds in Series 7 and in Series 10, when in truth and in fact he did not own such bonds. By the first conclusion it is stated that the plaintiff should recover nothing on bonds in Series No. 5 and 6 because the plaintiffs did not own bonds in such series.

Huebner is scarcely in a position now to assert that a false statement of the ownership was not material.

It is not necessary here to decide as to whether a city in this sort of proceeding ought to be subject to a class action in behalf of various unknown owners of bonds. See *Kimes* v. *City of Gary* (1946), 224 Ind. 294, 66 N. E. 2d 888. At least it would seem a clever device for preventing the running of the statute of limitations in favor of the city, but in any event the conclusions stated Huebner was to have a judgment for his services in the matter in the sum of $3,085.08 to be paid Huebner immediately out of city funds upon Huebner issuing his receipt therefor. Huebner's fees were 30% on the total amount of bonds and coupons for which the city was personally liable. Since the indictment stated that J. Martin Antrim owned no bonds in Series 7 and 10, on the bonds alone, excluding the coupons thereof, Huebner's attorney's fees were fraudulently increased in the sum of $1,251.11. It is no answer to say that the fraudulent representations were harmless to the city by reason of the fact that the city would not pay the bondholders until the surrender of the bonds, for Huebner was to be paid his 30% attorney's fees immediately, even though the bonds might not be in existence or might never be presented for payment. To state the matter specifically, Huebner by his fraud and deceit upon the court and upon the city of Hammond had a finding and conclusion in his favor for $1,251.11 in excess of his proper fees.

The judgment quashing the indictment should have been reversed.

NOTE.—Reported in 104 N. E. 2d 385.