## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2016, 7:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Danny E. Glass
Adam E. Glass
Fine & Hatfield, PC
Evansville, Indiana

Gary I. Blackman
Levenfeld Pearlstein, LLC
Chicago, Illinois

ATTORNEYS FOR APPELLEE

Patrick A. Shoulders
Jean M. Blanton
Ziemer, Stayman, Weitzel
& Shoulders
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brian L. Cain, Nancy Ilderton
and Wells Fargo Advisors, LLC,

*Appellants-Respondents,*

v.

Old National Bancorp, Inc.,

*Appellee-Petitioner*

January 29, 2016

Court of Appeals Case No.
82A04-1510-PL-1646

Appeal from the Vanderburgh
Circuit Court

The Honorable David D. Kiely,
Judge

Trial Court Cause No.
82C01-1508-PL-4324

**Baker, Judge.**

[1] Brian Cain and Wells Fargo Advisors, LLC ("Wells Fargo") (collectively, "Defendants") appeal the preliminary injunction order issued by the trial court in favor of Old National Bancorp, Inc. ("ONB"). Finding that Defendants consented to the issuance of the order, we affirm.

## Facts

[2] Cain became an employee of ONB in January 2003. As part of his employment, he signed a Confidentiality and Non-Solicitation Agreement (the 2003 Agreement). The Agreement sought to prevent Cain from doing the following for a one-year period after his employment terminated: soliciting or accepting the business of any ONB "customer"; soliciting or accepting the business of any "prospective customer" of ONB; advising any entity doing business with ONB to change their relationship with ONB; or inducing any ONB employee to leave ONB. Appellee's App. 166. "Customer" was defined as "a person or entity who is a customer of the Employer at the time of Employee's termination of employment or with whom the Employee had direct contact on behalf of the Employer. . . ." *Id.* at 167. "Prospective customer" was defined as "a person or entity who was the direct target of sales or marketing activity by the Employee or whom the Employee knew was a target of the Employer during the one year period preceding the Employee's termination. . . ." *Id.*

[3] When Cain began employment with ONB, he was involved in banking only. Beginning in 2010, he transitioned to the role of financial advisor and became

registered as a securities salesperson. ONB is not licensed to sell securities, so it directs this business to a licensed third-party broker, LPL Financial (LPL). ONB still receives payments based on advice LPL provides to ONB customers, and ONB pays LPL a percentage fee for regulatory oversight.

[4] While remaining an employee of ONB, Cain became a registered representative of LPL. He signed a Financial Representative Agreement with LPL on November 1, 2010 (the LPL Agreement). Upon his transition, Cain immediately came into possession of a book of investments worth $78 million, which had been built by the person he replaced.

[5] Cain resigned from his employment with ONB on August 21, 2015, and began working for Wells Fargo within the week. Immediately upon signing, Wells Fargo paid Cain a $500,000 bonus. On August 25, 2015, ONB filed a Complaint[1] and a Petition for Preliminary Injunction, alleging that Cain's activities with Wells Fargo constituted a violation of the 2003 Agreement.

[6] The trial court held a preliminary injunction hearing on September 15, 2015. Defendants tendered a motion to dismiss the complaint, arguing, in part, that Cain was only involved with former LPL customers, not ONB customers. The trial judge invited counsel for both sides into his chambers. The ensuing discussion did not occur on the record, but was recreated by ONB's counsel in a

---

[1] ONB did not file a verified complaint.

verified statement of evidence—pursuant to Appellate Rule 31—and was certified as "accurate and complete" by the trial judge. Appellee's App. 20.

[7] According to the verified statement of evidence, in chambers, the trial judge informed the parties that his first inclination was to grant the preliminary injunction, but that he was willing to hear arguments and evidence from either side. *Id.* at 14. The judge asked counsel for Defendants whether he would like to proceed with an evidentiary hearing. *Id.* at 15. Defendants' counsel replied that he would agree to a preliminary injunction on two conditions: that the trial court make no finding regarding whether the customers Cain was servicing were ONB customers or LPL customers; and that the preliminary injunction not include "prospective customers" as stated in the Employment Agreement. *Id*. The parties agreed to these conditions. *Id.* The trial court instructed ONB's counsel to draft a proposed injunction order. This was drafted and shared with Defendants' counsel—having seen it, Defendants' counsel responded positively and with no objections. *Id.* at 17. The agreed-upon order made the following conclusions of law: "ONB has no adequate remedy at law and the granting of a preliminary injunction will not disserve the public interest. Further, ONB has established a reasonable likelihood of success at trial and the prospective harm to ONB outweighs any harm to Cain." Appellant's App. 9. The trial court issued the order granting the preliminary injunction.

[8] On September 18, 2015, ONB filed its response to Defendants' motion to dismiss. Along with the response, affidavits were filed, the substance of which focused on the identity of Cain's customers. The Vice President of LPL stated,

on behalf of LPL, that Cain was servicing "customers of Old National Bank." *Id.* at 77. The affidavit also included Cain's LPL Agreement, which states, "LPL hereby appoints the Representative [Brian L. Cain] as a limited agent to service customers of Old National Bank." *Id.* at 81.

[9] On October 7, 2015, ONB filed a motion asking that Defendants be found in contempt, alleging that Cain and Wells Fargo were violating the injunction. The Defendants filed a notice of appeal and a motion to stay the preliminary injunction on October 9, 2015.

[10] The trial court held a contempt hearing on October 12, 2015. At the hearing, Defendants' counsel acknowledged the preliminary injunction, and noted that while he would not have agreed to an injunction regarding LPL customers, he "did not have any objection with regard to ONB customers." Appellee's App. 26. ONB presented evidence that since Cain's departure, clients have requested transfers of their funds from ONB to Wells Fargo in the amount of $11.2 million. After both parties presented evidence and argument, the trial court ruled that Defendants had violated the preliminary injunction, and it took the issue of sanctions under advisement.[2] Defendants now appeal.

---

[2] Since no punishment has been ordered yet, the contempt ruling is not ripe for review. *State ex rel. Neal v. Hamilton Cir. Ct.*, 248 Ind. 130, 134, 224 N.E.2d 55, 58 (1967).

# Discussion and Decision

[11] Defendants have two sets of arguments on appeal: first, that the trial court abused its discretion by issuing the preliminary injunction order; and second, that the 2003 Agreement is unenforceable under state and federal law.

[12] We find both sets of arguments to be misplaced. When reviewing the grant of a preliminary injunction, "[t]he question for the court upon the interlocutory application is not the final merits of the case. When the cause comes to be heard, the final merits may be very different." *Tuf-Tread Corp. v. Kilborn*, 202 Ind. 154, 154, 172 N.E. 352, 354 (Ind. 1930). The real question in this case is whether the Defendants consented to the issuance of the preliminary injunction order, and whether they will be held to it.

[13] As is made clear by the verified statement of evidence, which was certified as accurate by the trial court, the parties consented to the issuance of the preliminary injunction order. More proof of the agreement is the email exchange that followed ONB's drafting of the order: Defendants' counsel responded positively and without objection. Further proof of the agreement is the fact that Defendants did not object to the order until after ONB filed an information to hold them in contempt. It has long been the law in Indiana that,

> In the absence of fraud, parties who are competent to contract and not standing in confidential relations to each other may agree to the rendition of a judgment or a decree respecting any right which may be the subject of litigation. When such a decree is entered it is a decree by consent. A consent decree is not a judicial determination of the rights of the parties. It does not

> purport to represent the judgment of the court, but merely records the agreement of the parties with respect to the matters in litigation. Such decree cannot be reviewed by appeal.

*State v. Huebner*, 230 Ind. 461, 467, 104 N.E.2d 385, 387 (1952).

[14] The verified statement of evidence also makes clear that the trial court was willing to hear evidence and arguments on the matter, but only decided not to when Defendants' counsel waived that right and agreed to the order. Counsel also consented to the preliminary injunction order despite the fact that ONB had not filed a verified complaint. Therefore, insofar as the lack of evidence or the lack of a verified complaint constitutes an error, it is an invited error. Invited error is not subject to appellate review. *Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 695 (Ind. Ct. App. 2008).

[15] Defendants request us "to appreciate that under any conceivable scenario, it would make no sense for Cain and Wells Fargo's counsel to agree to an exceedingly broad non-compete injunction order. . . ." Appellant's Reply Br. 5 (emphasis omitted). Counsel for Defendants also stated in an affidavit, "It was my understanding from the Court's comments that the Order it was entering would not impose any restraining provision on the Defendants' right to accept or service securities customers and was only entered as to 'bank customers' for the non-securities work." Appellee's App. 220.

[16] We find counsel's decision to agree to the order to certainly be lacking in, but not totally devoid of, sense. Counsel believed that Cain was servicing customers of LPL and not of ONB. He was confident enough in his assessment

to risk the eventuality that came to pass: that a court might disagree. Defendants' counsel might have made an error, in tactics and in legal analysis, but it was not induced by any fraud on the part of ONB or ONB's counsel. We cannot save litigants from their own mistakes.

[17] We note that, by deciding this appeal in ONB's favor, we make no comment on the enforceability of the underlying 2003 Agreement. We reiterate that "a preliminary injunction proceeding is exactly that: preliminary." *Mercho-Roushdi-Shoemaker-Dilley Thoraco-Vascular Corp. v. Blatchford*, 900 N.E.2d 786, 795 (Ind. Ct. App. 2009). Defendants remain free to argue to the trial court that the 2003 Agreement is overbroad, oppressive, and unenforceable. But whereas courts will find covenants in restraint of trade void, we will not find poor litigation strategies to entitle a party to relief.

[18] ONB requests appellate attorney fees pursuant to Appellate Rule 66(E). This is a power we exercise with extreme restraint because of the potential chilling effect upon the exercise of the right to appeal. *Wagler v. West Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 384 (Ind. Ct. App. 2012). Accordingly, we decline ONB's request.

[19] The judgment of the trial court is affirmed.

Bradford, J., and Altice, J., concur.